In view of the above, I conclude as follows: That the easterly boundary of Huntington and the property granted to it under its patents is fixed and determined by the Fletcher patent of 1694, to wit, at the easterly side of Sampawam's Point; that to the west thereof its title extends to the ocean; that from the easterly side of Sampawam's Point to the Ranges the title to the land under water in the Great South Bay, or the locus in question is in the state of New York; and I accordingly give judgment for the defendant.

---

(63 Misc. Rep. 43.)

BURKE et al. v. RECTOR, ETC., OF TRINITY CHURCH et al.

(Supreme Court, Special Term, New York County. April, 1909.)

1. CONSTITUTIONAL LAW (§ 125*)—IMPAIRMENT OF CONTRACTS—GRANT OF CORPORATE POWERS.

A grant of corporate powers to an association for a public use constitutes a contract, within the federal Constitution, prohibiting the passage of laws impairing the obligation of contracts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 362–413; Dec. Dig. § 125.*]

2. CONSTITUTIONAL LAW (§ 125*)—CHARTERS—PROVISIONS OF RELIGIOUS CORPORATIONS LAW.

The Trinity Church corporation, which was chartered by the British crown in 1697, *held* not subject to the religious corporations law, defining the powers and duties of trustees of religious corporations, and prohibiting the diversion of church property from the uses prescribed by the discipline and rule of the corporation and of the ecclesiastical governing body, so far as such provisions are in derogation of the charter rights of such corporation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 362–413; Dec. Dig. § 125.*]

3. RELIGIOUS SOCIETIES (§ 9*)—CONTROL OF TEMPORALITIES—POWERS OF VESTRY.

The vestry of Trinity Church corporation are the governing body of such church, and exercise all corporate powers, and are the sole managers of the corporation in respect to its temporalities.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 66; Dec. Dig. § 9.*]

4. RELIGIOUS SOCIETIES (§ 9*) — DISCONTINUANCE OF PLACE OF PUBLIC WORSHIP.

The rector and vestry of Trinity Church have control of the property of St. John's Chapel, and have the power to discontinue its work, though it has been maintained by Trinity Church as a place of public worship since 1807, and rearrange its religious work, in disregard of the wishes of the congregation.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 66; Dec. Dig. § 9.*]

5. RELIGIOUS SOCIETIES (§ 14*)—CONTROL BY COURTS.

The courts will not interfere in matters of religious or ecclesiastical arrangement, unless property or civil rights are involved.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 100–102; Dec. Dig. § 14.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by John Burke and others against the Rector, Churchward-ens, and Vestrymen of Trinity Church, and others. Application for an injunction pendente lite. Application denied.

Order affirmed 117 N. Y. Supp. 1130.

William H. Hamilton, for plaintiffs.
Jay & Candler, for defendants.

O'GORMAN, J. This is an application for an injunction pendente lite restraining the defendants from closing St. John's Chapel and from interfering with the continuation of the usual religious services there-in. The Trinity Church corporation received its charter from the British crown in 1697. The parish of Trinity Church embraces the entire borough of Manhattan, and includes Trinity Church and nine chapels, with one rector and several vicars, curates, and assistants. St. John's Chapel, situated on the west side of the city, south of Canal street, was erected and since 1807 has been maintained by the Trinity corporation as a place of public worship. Owing to changed conditions in the neighborhood of St. John's, the vestry of Trinity Church has been considering for several years various plans looking to a consolidation of the religious work of St. John's with the work carried on at St. Luke's Chapel, which is also a part of Trinity parish and is situated in the same section of the city, about half a mile north of St. John's. On November 9, 1908, the vestry adopted a resolution to close St. John's Chapel on February 1, 1909, and to remove the work thereof to St. Luke's Chapel. In this connection the vestry, by their clerk, depose that Trinity Church has no intention to abandon its work in the region in which St. John's Chapel is located; that, on the contrary, it is designed to enlarge the work and make it more ef-fective; that special evangelistic services will be conducted at St. John's under conditions suitable to that neighborhood; and that Trin-ity Church is merely rearranging its work and changing its methods to meet changed conditions and existing needs.

The power of the rector and vestry of Trinity Church to discontinue the present work at St. John's and to institute the projected rearrange-ment of its religious and parochial work, in disregard of the wishes of the congregation of St. John's, is challenged in this action. In every corporation having a board of trustees the corporate powers are vested for all purposes of practical administration in the board as a governing body. The vestry are the governing board of Trinity Church, and necessarily exercise all the corporate powers. Madison Ave. Church v. Baptist Church, 46 N. Y. 131. The vestry have the supervision and control, and are the sole managers, of the corporation in respect of its temporalities. The plaintiffs are members of the congregation of St. John's Chapel, and, having observed certain ec-clesiastical requirements, have qualified themselves to vote at the an-nual election of churchwardens and vestrymen, and have thus become corporators of the Trinity corporation. This right to vote, however, confers no power upon them to interfere with the vestry, who, in the exercise of their authority, are seeking to apply under ecclesiastical approval the corporate property to what they conceive to be the most

efficient service in furtherance of its corporate objects. The property belongs to the Trinity corporation, and not to the corporators or other members of the congregation. The vestry, through whom the corporation acts, are not exceeding the power which they possess, and the court cannot undertake to review the exercise of their discretion or judgment.

Trinity corporation is not excluded by section 19 of the religious corporations law (Laws 1895, p. 477, c. 723), as added by Laws 1896, p. 279, c. 336, § 8, from the operation of the provisions of section 5 of the act (Laws 1895, p. 480, c. 723), which treats of the general powers and duties of trustees of religious corporations, and prohibits the diversion of church property from the uses prescribed by the discipline, rules, and usages of the corporation and of the ecclesiastical governing body to which the corporation is subject. Section 19 exempts therefrom only those churches incorporated under a general or special law prior to January 1, 1828. But while Trinity Church was not incorporated under a general or special law, and therefore does not fall within the express exemption, this corporation, nevertheless, is unaffected by the provisions of the religious corporations law, so far as they are inconsistent with or in derogation of the rights and privileges of Trinity corporation as they exist under its charter, under the doctrine settled in the Dartmouth College Case, 4 Wheat. 518, 4 L. Ed. 629, that a grant of corporate powers by the sovereign to an association of individuals for a public use constitutes a contract, within the meaning of the federal Constitution, prohibiting a state Legislature from passing laws impairing its obligations. If it be assumed that section 5 is applicable, the contemplated action of the defendants does not appear to be inconsistent therewith.

The defendants are not violating any of the canonical usages or regulations of the Episcopal Church, and their plan has received the express sanction of the ecclesiastical head of the diocese. Under canon 15 of the Protestant Episcopal Church, the rector of the parish, subject to the canonical authority of the bishop, may determine and prescribe what services shall be held in a church and in what manner and by whom they shall be performed. The plaintiffs are required to conform to the canons, usages, and discipline of the church of which they are members, and the court will not aid them in their resistance to its constituted authorities. The judicial power is reluctant to interfere in matters of religious or ecclesiastical arrangement, and will do so only when rights of property or civil rights are involved. No such rights appear to be affected by this controversy.

I conclude, therefore, that the plaintiffs have presented no case of which a court of equity will take cognizance, and the application for injunctive relief must be denied. The temporary restraining order, heretofore granted, is vacated.

Application granted.