FLORA M. KOCH and GRATTAN S. CONDON, in Their Own Behalf, etc., Plaintiffs, *v.* GUY PARKHURST ESTES and Others, Defendants.

FLORA M. KOCH and GRATTAN S. CONDON, in Their Own Behalf, etc., Plaintiffs, *v.* THOMAS B. TAYLOR and Others, Defendants.

Supreme Court, New York County, January 11, 1933.

*House, Grossman & Vorhaus* [*Frederick Henley* and *Jesse Henley* of counsel], for the plaintiffs.

*Delafield, Thorne, Burleigh & Marsh* [*Robert McC. Marsh, George H. Porter* and *Meyer B. Cushner* of counsel], for the defendant Fifth Church of Christ Scientist.

*Satterlee & Spence* [*Kenneth M. Spence* of counsel], for the defendant F. Colburn Pinkham.

*Mack, Taylor, Spiegelberg & McCauley* [*Harry W. Mack* of counsel], for the defendants Thomas B. Taylor and William J. Taylor Company and Guaranty Trust Company of New York, Thomas B. Taylor and Hector W. Thomas, as executors under the will of William J. Taylor.

*Cornelius C. Webster*, for the defendant Minnie C. Vesey.

*Guggenheimer & Untermyer* [*Charles S. Guggenheimer* and *Abraham Shamos* of counsel], for the defendant Hatch.

*Philip J. Dunn*, for the defendant Thomas, individually.

SHIENTAG, J.   Plaintiffs allege that at the time of the commencement of this action they were members of the defendant Fifth Church of Christ Scientist.   They sue to compel the defendants to account to the church for all considerations illegally received by them and for secret profits they are alleged to have made in the conduct of the affairs of the church, and further to compel the

individual defendants to account to the church for certain acts of malfeasance and misfeasance of which the complaint alleges they have been guilty. The defendants, individual and corporate, move to dismiss the complaint. Other complaints by these plaintiffs, embodying essentially the facts set forth in the present complaint, were dismissed by this court for insufficiency, and in each instance leave was granted to the plaintiffs to amend. The former complaints were dismissed because they failed to allege that a demand had been made upon the corporation to commence an action or that such demand would be unavailing. This error plaintiffs have now cured in the present complaint, but it is again assailed by the defendants on the ground: (1) That the complaint fails to allege that plaintiffs were members of the church at the time of the commission of the alleged wrongs; (2) that the mere allegation of refusal of the corporation upon demand to bring the action is insufficient, and does not give rise to any inference that the trustees have acted improperly; (3) that the plaintiffs are concluded by the action of the corporate body; and (4) that the complaint fails to charge, either directly or by reasonable inference, that the refusal of the trustees and of the corporate body to sue was other than the fair exercise of their sound discretion. Let it be understood at the outset that in this case there is no charge connecting any member of the board of trustees as now constituted with any of the alleged wrongs complained of, nor is there a suggestion of self-interest on the part of any member of the board, which would prevent the exercise of fair and impartial judgment.

The first question is: Have the plaintiffs the capacity to institute this action? They were not members of the church at the time of the commission of the alleged wrongful acts. The Court of Appeals of this State, taking a position contrary to that of the United States Supreme Court, has held that the fact that one did not become a stockholder until after the commission of the wrongful acts complained of did not preclude him from maintaining a stockholder's action for the redress of such wrongs. (Compare *Pollitz* v. *Gould*, 202 N. Y. 11, with *Hawes* v. *Oakland*, 104 U. S. 450.) True, *Pollitz* v. *Gould* involved, and its reasoning was applicable to, a business corporation. A member of a religious corporation, it is urged, is not a stockholder. He has no indivisible interest in its property and assets even upon dissolution. (Religious Corp. Law, §§ 16, 18.) He has no interest that is assignable, nor may he ordinarily transfer his membership to another. It is, however, well settled that in a proper case a member of a religious corporation may bring a representative action in its behalf. If a " present " member has the right to sue, there would seem to be no compelling

reason why a "subsequent" member should not have the same right. Neither has any property interest in the corporation, but each may be said to have a use interest which entitles him to take appropriate action. The danger of abuse in connection with this right is practically as great in one case as in the other. The allegation that plaintiffs were members of the church at the time of the commencement of the action is sufficient. Assuming that on a motion to dismiss, the court may consider a concession *dehors* the pleading, that after the action was commenced plaintiffs ceased to be members, the complaint would not fall. Neither a stockholder, nor a member, when suing in behalf of a corporation, does so because of any special injury that has been done him. He has no direct cause of action. He is allowed to sue merely to set the machinery of justice in motion. (*Continental Securities Co.* v. *Belmont,* 206 N. Y. 7, 13.) "The part which a stockholder plays in such an action is merely that of an instigator." (*Holmes* v. *Camp,* 180 App. Div. 409, 412.)

Assuming then that plaintiffs have the capacity to sue, does the complaint establish their right to do so in this case? A religious corporation has a double aspect, the one spiritual, the other temporal. With regard to the former, courts have no concern; with regard to the latter, a religious corporation like any other corporation is subject to judicial supervision and control. Generally speaking, trustees of a church, in charge of its temporal affairs, in their dealings with the property of the church may be said to occupy the same position as directors of a business corporation. That they have precisely the same status, or are subject precisely to the same rules, cannot be asserted dogmatically, because of inherent differences in functions and methods of operation. Even in the case of a business corporation, it is a fundamental principle that corporate assets are vested in the corporation. A right of action is no different from any other asset of a corporation. How that asset shall be administered is a question for the duly constituted authorities of the corporation to determine. Courts will not interfere at the behest of a minority stockholder "except where it is necessary to prevent an absolute failure of justice in cases which have been recognized as exceptional in their character and calling for the extraordinary powers of a court of equity." (*Hawes* v. *Oakland,* 104 U. S. 450, 454.) In order to permit a stockholder to sue it is not sufficient to show that the corporation has a claim against a third party on which the board of directors has refused to bring suit. If that were the case, courts would be deluged with suits, and the corporate form of doing business instead of being one of the most convenient methods would become one of the most precarious.

Where it is not charged that the present board of directors in

any way participated in the alleged wrongful acts, a stockholder, in order to maintain a suit on behalf of the corporation, must allege facts from which may reasonably be inferred:

1. The existence of a cause of action in favor of the corporation.

2. The refusal of the board of directors to sue, or that demand on the board to sue would be unavailing.

3. That the refusal to sue is due (a) to fraud, bad faith or misconduct on the part of the board amounting to a breach of trust; or (b) to inexcusable neglect on the part of the board, or indifference to the welfare of the corporation; or (c) that the board, in refusing to sue, was subjected to improper control or was otherwise not in a position to exercise fair, honest and independent judgment.

There may of course be a breach of trust though no moral delinquency is involved. It must, however, appear from the complaint that the failure to sue was the result of a breach of duty on the part of the board. An error of judgment will not suffice. To put it as simply as possible, it must appear from the allegations of the complaint that in refusing to institute the action the board of directors were not acting in good faith as honest, diligent directors should act. (*Hawes* v. *Oakland*, 104 U. S. 450; *Flynn* v. *Brooklyn City R. R. Co.*, 158 N. Y. 493; *United Copper Co.* v. *Amalgamated Copper Co.*, 244 U. S. 261; *Corbus* v. *Gold Mining Co.*, 187 id. 455; *Watson* v. *Consolidated Laundries Corp.*, 235 App. Div. 234; *Kelly Asphalt Block Co.* v. *Brooklyn Alcatraz Asphalt Co.*, 190 id. 750; *Groel* v. *United Electric Co. of N. J.*, 70 N. J. Eq. 616.)

" Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion *intra vires* the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment." (*United Copper Co.* v. *Amalgamated Copper Co.*, 244 U. S. 261, 263.)

This is the principle laid down by the case of *MacDougall* v. *Gardiner* (L. R. 1 Ch. Div. 13 [1875]), quoted with approval in *Kelly Asphalt Block Co.* v. *Brooklyn Alcatraz Asphalt Co.* (190 App. Div. 750, at p. 756): " There may be claims against directors; there may be claims against officers; there may be claims against debtors; there may be a variety of things which a company may well be entitled to complain of, but which, as a matter of good sense, they do not think it right to make the subject of litigation; and

it is the company, as a company, which has to determine whether it will make anything that is wrong to the company a subject-matter of litigation, or whether it will take steps itself to prevent the wrong from being done."

In *Corbus* v. *Gold Mining Co.* (187 U. S. 455, 463) the court said: " The directors represent all the stockholders and are presumed to act honestly and according to their best judgment for the interests of all. Their judgment as to any matter lawfully confided to their discretion may not lightly be challenged by any stockholder or at his instance submitted for review to a court of equity. The directors may sometimes properly waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right. They may regard the expense of enforcing the right or the furtherance of the general business of the corporation in determining whether to waive or insist upon the right. And a court of equity may not be called upon at the appeal of any single stockholder to compel the directors or the corporation to enforce every right which it may possess, irrespective of other considerations. It is not a trifling thing for a stockholder to attempt to coerce the directors of a corporation to an act which their judgment does not approve, or to substitute his judgment for theirs."

Causes of action based on fraud are in themselves no exception to the general rule unless the directors who have refused to sue are themselves implicated in the fraud. " It is not the fact that a fraud has been committed, but the fact of rightful or wrongful refusal to redress the fraud, which determines whether equity will aid the stockholder." (*Kessler & Co.* v. *Ensley Co.*, 129 Fed. 397.)

Nor is the amount involved conclusive, save where the life of the corporation or body is imperilled. The nature of the wrong and the amount involved are but incidents to be considered in the light of all the circumstances to determine whether the refusal to sue was the result of improper motives or inexcusable neglect.

A religious corporation presents even more delicate questions of internal management and policy than a business corporation. The commencement of a litigation especially involves many considerations in addition to the academic existence of a cause of action. Not only are there questions of expense and the probability of success, but in addition consideration must be given to possible reactions upon other interests and policies of the church. The bringing of a law suit may well be contrary to the policies and laws of the denomination and result not only in the alienation of a large part of its membership, but also in creating a reputation for litigiousness which may have a harmful effect within the body

of the church and externally. In the conduct of its temporal affairs, questions of church policy may be involved of which courts can have no adequate conception. The courts are, therefore, extremely loath to interfere with the conduct of the temporal affairs of religious corporations at the instance of a small number of dissatisfied members. This attitude is fully justified by the nature and purposes of religious corporations and by the likelihood of encountering doctrinal disputes. (*Watson* v. *Jones*, 13 Wall. 679; *Burke* v. *Rector, etc., Trinity Church*, 63 Misc. 43; affd., 132 App. Div. 930.)

In the case at bar the wrongful acts charged had their inception over ten years ago. Successive boards of trustees refused to take action. The present board, against whom no wrongdoing is charged, likewise refused to sue.

" The stockholder appeals to the conscience of the chancellor at the very threshold of the litigation to set aside the judgment of a corporate tribunal provided in advance, to determine primarily for every stockholder the very question brought before the court. The law does not presume fraud, misconduct, or infidelity on the part of the directors; on the other hand, in the absence of showing to the contrary, presumes that they acted rightly and properly. When the governing body is not challenged as in any wise unfit or interested, and no ulterior or improper motive is imputed to it, the decision by such a body is *prima facie* right, and must stand, unless the court can see from the facts stated in the stockholder's bill that the decision, upon the facts presented, proves its own unworthiness — shows a failure of justice to the corporation, if the stockholder is not permitted to sue." (*Kessler Co.* v. *Ensley Co.*, 129 Fed. 397, 400.)

In this case there was more than a refusal of the board of trustees to institute suit.

Section 200 of the Religious Corporations Law provides: " A corporate meeting of an incorporated church, whose trustees are elective as such, may give directions, not inconsistent with law, as to the manner in which any of the temporal affairs of the church shall be administered by the trustees thereof; and such directions shall be followed by the trustees."

The corporate body in meeting assembled approved the action taken by the board of trustees, and rejected the proposal that a suit be instituted. There is not the slightest suggestion in the complaint that the action of the corporate body was influenced by improper motives, by self-interest, or by bad faith. The complaint when subjected to scrutiny, furnishes many reasons why a conscientious board of trustees and a corporate body, with an eye

single to the best interests of the church, might well hesitate to embark upon litigation of this character. It is of course well settled that pleadings are to be liberally construed and the pleader is entitled to have the most favorable inferences drawn from his pleadings. In this connection, however, it is well to keep in mind the observation of Chief Judge RUGER: " It was formerly the settled rule to construe doubtful pleadings most strongly against the pleader, but this rule has been so far modified by the Code as now to require them to be liberally construed with a view to substantial justice between the parties. This modification has, however, been held to extend only to matters of form and not to apply to the fundamental requisities of a cause of action. * * * A construction of doubtful or uncertain allegations in a pleading, which enables a party by thus pleading to throw upon his adversary the hazard of correctly interpreting their meaning, is no more allowable now than formerly; * * * It is in the nature of things that a party who is required to frame his issues for the information of his adversary, and the court, must be responsible for any failure to express his meaning clearly and unmistakably." (*Clark* v. *Dillon,* 97 N. Y. 370, 373.)

The complaint sets forth five transactions which it alleges constituted wrongdoing and for which the corporation should have instituted suit: (1) The McDonough commission, (2) the disappearance of Liberty bonds, (3) secret profits made in connection with the decorating of the church, (4) fraud alleged to have been perpetrated by Taylor, and (5) secret profits alleged to have been wrongfully made by Pinkham and Estes.

As to the first three, if indeed the complaint sets forth a good cause of action in favor of the corporation, there clearly appears to be no reason why the court at the instance of dissenting members should interfere with the discretion of the board of trustees and of the corporate body. As to the fourth, from the face of the complaint there would seem to be good reasons why prudent trustees and a wise membership should hesitate to embroil the church in such litigation, uncertain as to the facts and the law, involving a stale claim, and fraught with danger to the church. If a fraud is claimed to have been perpetrated, no damage to the church is alleged and rescission, if exercised, may endanger the ninety-nine years' lease which the church obtained rent free, without incurring any liability and without the expenditure of a single dollar. What the future may hold in store cannot of course be foretold, but thus far the church is satisfied with its bargain. The fifth transaction complained of, in so far as it affects the defendant Pinkham, is one which has given the court great concern. Certainly there is here

made a charge which merited the fullest investigation by the trustees and the corporate body. Here again there are so many weaknesses in the complaint, so many evasions, uncertainties and ambiguities, that it cannot be said that the failure to sue constituted a breach of duty. The wrong is alleged to have had its origin more than ten years ago. The financial responsibility of Pinkham is not set forth. There are no allegations from which it may reasonably be inferred that Pinkham acted in a fiduciary capacity in connection with the transaction complained of, or that he made secret profits while acting in such capacity. In any event, there is nothing in the complaint that would warrant the inference that in declining to sue Pinkham the trustees and the corporate body were prompted by any consideration other than the best interests of the church. Only in a most extreme case should a court say that the honest and deliberate determination of the governing body and of a majority of the membership of a religious corporation, in refusing to sue upon a claim for past wrongs, is so palpably and inexcusably negligent as to be tantamount to a breach of duty and so to justify judicial interference at the instance of a dissenting member.

In this complaint the good faith of trustees or of the corporate body in refusing to sue is not challenged. It is not claimed that such refusal was affected by fraud or self-interest, or dictated by improper considerations. From the complaint in its entirety, the inference cannot be drawn that the refusal to sue was the result of inexcusable neglect, or due to an indifference to the welfare of the church, amounting to a breach of duty. The wisdom of the decision of the trustees concerning some of the matters here involved may be questioned. For errors of judgment on the part of the trustees with respect to a proposed suit, the remedy is not by appeal to the courts. In such case the arena for the conflict is within the corporate body itself. If the courts will not interfere with the determination of the board of directors of a business corporation honestly and fairly arrived at, it certainly should not do so in the case of a religious corporation, the conduct of whose temporal affairs is often actuated by considerations which cannot be measured in terms of dollars and cents.

Motion to dismiss complaint is granted.