OPINION OF THE COURT
 

 Simons, J.
 

 This action arises from a dispute between New York City’s St. Bartholomew’s Church, its rector, church wardens
 
 *421
 
 and vestrymen, and a minority of the church’s parishioners who oppose the proposed construction of a high-rise commercial office tower on a portion of the church’s Park Avenue property. On this appeal, plaintiff parishioners seek a declaratory judgment determining that defendants have used church funds for purposes other than the "support and maintenance” of the church, in violation of Religious Corporations Law § 5, and an order enjoining further violations of the statute. Defendants’ present activities in connection with the office tower development plan do not violate the Religious Corporations Law and, therefore, we affirm the order appealed.
 

 St. Bartholomew’s Church is a religious corporation of the Protestant Episcopal faith. Since 1980 it has sought to develop its real estate by contracting with a developer for the construction of an office tower on the site of its Community House, adjacent to the church, through a long-term lease arrangement. Because St. Bartholomew’s is an "architectural and historic * * * edifice of enormous cultural significance”, it has been designated a protected landmark by the city’s Landmark Preservation Commission
 
 (see, Rector, Church Wardens & Vestrymen v Committee to Preserve St. Bartholomew’s Church,
 
 84 AD2d 309, 310,
 
 appeal dismissed 56
 
 NY2d 645). As a result of this designation, the church must obtain a certificate of appropriateness from the Commission, permitting alteration of the landmark site, before development of the church property may proceed. The Commission has repeatedly refused to grant a certificate of appropriateness to St. Bartholomew’s for the construction of the high-rise office tower, however, and plaintiffs have challenged, in this and related actions, defendants’ expenditure of church funds to contest the landmark designation, and to plan and develop the construction it proposes
 
 (see, e.g., Rector, Church Wardens & Vestrymen v Committee to Preserve St. Bartholomew’s Church, 56
 
 NY2d 71 [upholding church election authorizing sale of church property];
 
 Rector, Church Wardens & Vestrymen v Committee to Preserve St. Bartholomew’s Church,
 
 84 AD2d 309,
 
 supra
 
 [dissolving preliminary injunction barring the church from selling or leasing its real property]).
 

 In this action, plaintiffs contend that the defendants have violated section 5 of the Religious Corporations Law. They argue that moneys contributed to an incorporated church are analogous to trust funds which can only be spent as prescribed by the statute. They assert that the use of St. Bartholomew’s funds to pursue the office tower development plan constitutes
 
 *422
 
 an improper diversion from the trust purposes for which the funds were originally donated because the disputed funds were not invested for the "support and maintenance” of the church, but rather were wasted in a highly speculative profit-seeking scheme and are now beyond recoupment (relying on
 
 Westminster Presbyt. Church v Trustees of Presbytery,
 
 222 NY 642;
 
 St. Nicholas Cathedral v Kedroff,
 
 302 NY 1,
 
 revd
 
 344 US 94;
 
 Kroth v Congregation Chebra Ukadisha Bnai Israel Mikalwarie,
 
 105 Misc 2d 904;
 
 Beth Jacob v Morgen Appliances,
 
 196 Misc 677). Plaintiffs acknowledge the general power of the defendants to sell or lease church real property, but they challenge the proposed tower development as a speculation which has little chance of success and which already has cost in excess of $1,060,000 and resulted in substantial liabilities.
 
 [1]
 
 It is defendants’ position that the activities of churches are not strictly limited to the performance of religious activities. They contend that there can be no charge that the church has stopped its religious observances to pursue a real estate business, and that the development plan is incidental to the maintenance and upkeep of the religious corporation: it is designed to improve the financial condition of the church and to support its activities. They maintain that St. Bartholomew’s is engaged in an orderly plan to alleviate its financial difficulties by realizing the value of its principal asset — its real estate —and that this is a proper exercise of corporate authority under Religious Corporations Law § 5 not subject to judicial review.
 

 Preliminarily, we note that resolution of this internal dispute by a civil court does not violate the First Amendment prescription that religious bodies be left free to decide church matters for themselves, uninhibited by State interference, because the appeal can be decided on the basis of statutory interpretation and common-law precedent without reference to matters of religious belief or dogma
 
 (see, First Presbyt. Church v United Presbyt. Church,
 
 62 NY2d 110, 117 [dispute
 
 *423
 
 over title to church property];
 
 Avitzur v
 
 Avitzur; 58 NY2d 108,
 
 cert denied
 
 464 US 817 [dispute concerning secular obligations of religious marriage contract]).
 

 The primary purpose of the Religious Corporations Law is to provide an orderly method for the administration of the property and temporalities dedicated to the use of religious groups, and to preserve them from exploitation by those who might divert them from the true beneficiaries of the corporate trust
 
 (St. Nicholas Cathedral v Kedroff,
 
 302 NY 1, 29,
 
 supra).
 
 The general powers and duties of the trustees of religious corporations are set forth in Religious Corporations Law § 5.
 
 [2]
 
 Writing in 1914, Chief Judge Willard Bartlett observed: "[t]he law of the state of New York prescribing, as it has done ever since 1875, that the temporalities of a religious corporation shall be administered in accordance with denominational usage, contemplates the co-existence of a church in the spiritual sense and a church in the legal sense, working together toward the same beneficent ends”
 
 (Westminster Presbyt. Church v Trustees of Presbytery,
 
 211 NY 214, 223). In a similar vein, Chief Judge Hiscock interpreted the predecessor statute to Religious Corporations Law § 5: "We think that when this provision provides that the trustees of an 'incorporated church’ shall administer this property for the support and maintenance of 'the church corporation’ it contemplates and takes into account the purposes and needs of the congregation which creates, perpetuates and is represented by the corporation or legal entity. The term 'incorporated church’ for the purposes of this provision naturally suggests the entire church as it consists of the spiritual and legal bodies which go to make it up”
 
 (Trustees of Presbytery v Westminster Presbyt. Church,
 
 222 NY 305, 317).
 

 St. Bartholomew’s is an "incorporated church” created,
 
 *424
 
 under the laws of New York, to enable its members to meet for "divine worship or other religious observances” (Religious Corporations Law § 2;
 
 see, Johnston v Hughes,
 
 112 App Div 524, 526,
 
 revd, on other grounds
 
 187 NY 446). The trustees of the church must administer the temporalities of the "legal church” in accordance with the usages, and in support and maintenance of, the "spiritual church”
 
 (see, Westminster Presbyt. Church v Trustees of Presbytery,
 
 211 NY 214, 223,
 
 supra).
 
 Within the strictures of the Religious Corporations Law concerning the administration and disposition of church property, an incorporated church is free to engage in enterprises that are incidental to the maintenance and upkeep of the religious corporation
 
 (see, Beth Jacob v Morgen Appliances,
 
 196 Misc 677, 678,
 
 supra; and see,
 
 50 NY Jur, Religious Societies, § 118, at 43;
 
 cf., People ex rel. Watchtower Bible & Tract Socy. v Haring, 8
 
 NY2d 350 [availability of tax exemption for profit-making activities of religious corporation is dependent upon determination that the activity is reasonably incident to major corporate purpose]). That an incorporated church may invest its funds in income-producing property is reasonably implied from the trustees’ power, and duty, to act to preserve the corporation’s funds
 
 (see, Bowman v Bloomfield Mgt.,
 
 197 Misc 523, 524-525). Manifestly, the trustees are also empowered to administer church property in such a manner that the assets are rendered more productive in order to assure the continued viability of the corporation’s spiritual objectives
 
 (see, id.; see also, Beth Jacob v Morgen Appliances,
 
 196 Misc 677, 678,
 
 supra;
 
 50 NY Jur, Religious Societies, § 118, at 43-44;
 
 but see,
 
 Annotation,
 
 Benevolent Corporations-Powers,
 
 100 ALR 579 [stating then-majority view that religious corporations,
 
 inter alia,
 
 may not engage in enterprise for profit]). Any profit-making activities undertaken by the "legal church” are, of course, subject to the limitation that the proceeds must support the lawful purpose of the "spiritual church”
 
 (see,
 
 Not-For-Profit Corporation Law § 204 [limitation on profit-making activities]; Religious Corporations Law § 2-b [applicability of Not-For-Profit Corporation Law]; Religious Corporations Law § 5-a [investment of funds]).
 

 Where, as here, the profit-seeking activity undertaken by the trustees of a religious corporation is reasonably incidental to its support and maintenance, and is directed toward assuring that the needs of the "spiritual church” will be met, there is no occasion for a court’s interference in the process. The prudence of the particular investment or expenditure, legally
 
 *425
 
 incurred, must be left to the determination of the church members
 
 (see, Koch v Estes,
 
 146 Misc 249,
 
 affd
 
 240 App Div 829,
 
 affd
 
 264 NY 480;
 
 Kroth v Congregation Chebra Ukadisha Bnai Israel Mikalwarie,
 
 105 Misc 2d 904, 917,
 
 supra).
 
 The wisdom of defendants’ decision concerning some of these matters may be questioned by plaintiffs, but the remedy is not by appeal to the courts. As another court said so well, "[i]f the courts will not interfere with the determination of the board of directors of a business corporation honestly and fairly arrived at, it certainly should not do so in the case of a religious corporation, the conduct of whose temporal affairs is often actuated by considerations which cannot be measured in terms of dollars and cents”
 
 (see, Koch v Estes,
 
 146 Misc 249, 257,
 
 affd
 
 240 App Div 829,
 
 affd
 
 264 NY 480,
 
 supra).
 
 Plaintiffs’ second cause of action, now before us, although questioning the trustees’ prudence in pursuing the development plan, does not allege that the trustees have acted dishonestly or unfairly or that they have abandoned church purposes in favor of engaging in a commercial enterprise. There is, therefore, no ground to support the interference of the courts in the St. Bartholomew’s development plan at the present time.
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed.
 

 Chief Judge Wachtler and Judges Kaye, Titone, Hancock, Jr., and Bellacosa concur; Judge Alexander taking no part.
 

 Order affirmed, with costs, and certified question answered in the affirmative.
 

 [1]
 

 .On this appeal, plaintiffs seek review of the Appellate Division affirmance of the order dismissing the second cause of action discussed above, and also the fifth and sixth causes of action, brought against individual defendants as a derivative action. Special Term had dismissed these causes of action without prejudice for failure to join 5% of the church membership as required by Not-For-Profit Corporation Law § 623 (a) and § 720 (b). We do not reach the merits of the dismissal of these two causes of action, for plaintiffs have since served an amended complaint, alleging the derivative action claims, in which the requisite number of members has joined. Hence, any issue as to the dismissal of the fifth and sixth causes of action is moot.
 

 [2]
 

 .Religious Corporations Law § 5 provides, in pertinent part: "The trustees of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenues therefrom, and shall administer the same in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body, if any, to which the corporation is subject, and with the provisions of law relating thereto, for the support and maintenance of the corporation, or, providing the members of the corporation at a meeting thereof shall so authorize, of some religious, charitable, benevolent or educational object conducted by said corporation or in connection with it, or with the denomination, if any, with which it is connected; and they shall not use such property or revenues for any other purpose or divert the same from such uses.”