■ In the Matter of CONGREGATION YETEV LEV D'SATMAR, INC., Petitioner, v JACOB (JENO) (YAAKOV) KAHANA et al.,

Respondents. (Matter No. 1.) In the Matter of CONGREGATION YETEV LEV D'SATMAR, INC., et al., Appellants, v JACOB (JENO) (YAAKOV) KAHAN et al., Respondents. (Matter No. 2.) CONGREGATION YETEV LEV D'SATMAR, INC., et al., Petitioners, v 26 ADAR N.B. CORP. et al., respondents. (Matter No. 3.) [820 NYS2d 62]—

In a proceeding pursuant to CPLR article 75 to compel arbitration of claims before a rabbinical court (matter No. 1), a separate proceeding pursuant to Not-For-Profit Corporation Law § 618, inter alia, to determine the validity of the election of officers of Congregation Yetev Lev D'Satmar, Inc. (matter No. 2), and an action pursuant to RPAPL article 15 to compel the determination of a claim to real property (matter No. 3), the petitioners in matter No. 2 appeal, as limited by their brief, from so much of an order and judgment (one paper) of the Supreme Court, Kings County (Barasch, J.), dated October 22, 2004, as dismissed that proceeding on the ground that it presented a nonjusticiable issue. Justice Lunn has been substituted for Justice Mastro (*see* 22 NYCRR 670.1 [c]).

Ordered that the order and judgment is affirmed insofar as appealed from, with costs.

The First Amendment prohibits a civil court from conducting an inquiry into religious law, beliefs, or internal hierarchy (*see Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich*, 426 US 696 [1976]; *Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America*, 344 US 94 [1952]), resolving disputes over a religious group's membership requirements (*see Park Slope Jewish Ctr. v Stern*, 128 AD2d 847 [1987]; *Matter of Kaminsky*, 251 AD 132 [1937], *affd* 277 NY 524 [1938]), or inquiring into religious disputes (*see Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 US 440 [1969]; *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.*, 62 NY2d 110 [1984], *cert denied* 469 US 1037 [1984]).

Pursuant to the Religious Corporations Law, New York religious groups may organize into corporations "to provide an orderly method for the administration of the property and temporalities dedicated to the use of religious groups, and to preserve them from exploitation by those who might divert them

from the true beneficiaries of the corporate trust" (*Morris v Scribner*, 69 NY2d 418, 423 [1987]). Constitutional problems are avoided because the Religious Corporations Law governs a religious corporation's temporal affairs, while spiritual affairs remain with the religion's leadership (*see* Religious Corporations Law § 5; *Westminster Presbyt. Church of W. Twenty-Third St. v Trustees of Presbytery of N.Y.*, 211 NY 214 [1914]; *Islamic Ctr. of Harrison, Pa. v Islamic Science Found.*, 216 AD2d 357 [1995]).

Contrary to the appellants' contention, this dispute over the rightful Board of the Congregation Yetev Lev D'Satmar, Inc. (hereinafter the Congregation) and whether the respondents' election violated the Religious Corporations Law cannot be decided by application of neutral principles of law (*see Jones v Wolf*, 443 US 595 [1979]; *Avitzur v Avitzur*, 58 NY2d 108 [1983], *cert denied* 464 US 817 [1983]). Rather, resolution of the parties' dispute would necessarily involve impermissible inquiries into religious doctrine and the Congregation's membership requirements (*see Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich, supra; Presbyterian Church in the U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church, supra; Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America, supra; First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am., supra; Matter of Kissel v Russian Orthodox Greek Catholic Holy Trinity Church of Yonkers*, 103 AD2d 830 [1984]; *see also Ebenezer Mar Thoma Church v Alexander*, 279 AD2d 548 [2001]; *Park Slope Jewish Ctr. v Stern, supra; Mays v Burrell*, 124 AD2d 714 [1986]). Accordingly, the Supreme Court properly dismissed the proceeding in matter No. 2 on the ground that it presented a nonjusticiable issue.

In light of our determination, we need not reach the parties' remaining contentions. Schmidt, J.P., Lunn and Covello, JJ., concur.

Spolzino, J., dissents and votes to reverse the order and judgment insofar as appealed from, and remit the matter to the Supreme Court, Kings County, for a determination with respect to the merits of the proceeding, with the following memorandum: The proceeding at issue on appeal was brought pursuant to Not-for-Profit Corporation Law § 618. Pursuant to that provision, the Supreme Court is required, "[u]pon the petition of any member aggrieved by [the] election" to "forthwith hear the proofs and allegations of the parties, and confirm the election, order a new election, or take such other action as justice may require" (Not-for-Profit Corporation Law § 618). There is no

dispute that this provision applies to disputes arising from elections conducted by religious corporations (*see* Religious Corporations Law § 2-b; *Matter of Venigalla v Alagappan*, 307 AD2d 1041, 1042-1043 [2003]; *Congregation Yetev Lev D'Satmar v 26 Adar N.B. Corp.*, 219 AD2d 186, 190 [1996]; *cf. Rector, Church Wardens & Vestrymen of St. Bartholomew's Church v Committee to Preserve St. Bartholomew's Church*, 84 AD2d 309, 314 [1982]).

My colleagues in the majority would nevertheless affirm the order and judgment of the Supreme Court insofar as appealed from, which declined to address the issues presented by this proceeding, on the ground that the First Amendment precludes us from resolving what they view as a religious dispute. As I see it, however, these issues can be resolved by the application of neutral principles of law, without regard to matters of religious doctrine. Since that is the standard by which the Court of Appeals has distinguished justiciable disputes of this sort from those that are foreclosed by the First Amendment from adjudication in civil courts (*see Park Slope Jewish Ctr. v Congregation B'nai Jacob*, 90 NY2d 517 [1997]; *Morris v Scribner*, 69 NY2d 418, 422-423 [1987]; *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.*, 62 NY2d 110 [1984], *cert denied* 469 US 1037 [1984]; *Avitzur v Avitzur*, 58 NY2d 108, 115 [1983], *cert denied* 464 US 817 [1983]), there was no occasion here for the Supreme Court to refuse to make the determination statutorily required of it. The First Amendment does not require that we ignore the corporation's bylaws, and thereby leave the appellants without a remedy for what is essentially a secular wrong, simply because the respondents assert that, as a matter of faith, the Grand Rebbe has secular authority beyond that which the corporation's organizational documents describe. I would, therefore, reverse the order and judgment insofar as appealed from and remit the matter to the Supreme Court, Kings County, for a determination with respect to the merits of the proceeding.

The "neutral principles of law" analysis adopted by the Court of Appeals in *First Presbyt. Church v United Presbyt. Church (supra)*, "contemplates the application of objective, well-established principles of secular law to the dispute . . . , thus permitting judicial involvement to the extent that it can be accomplished in purely secular terms" (*Avitzur v Avitzur, supra* at 115; *see Morris v Scribner, supra*). Consistent with this principle, New York courts have routinely adjudicated disputes such as that which is presented here. In *Matter of Kaminsky* (251 App Div 132 [1937], *affd* 277 NY 524 [1938]), the Appellate Division,

Fourth Department, invalidated competing elections to the board of trustees of the Ruthenian Greek Catholic Church of Syracuse, finding, after a trial, that due notice of the elections had not been given and nonmembers had been permitted to vote. In *Matter of Venigalla v Alagappan (supra)*, we removed the board of trustees of the Hindu Temple Society of America and invalidated certain bylaws approved by the improperly elected board on the ground that the election had not been conducted in a manner consistent with the bylaws. Most recently, in *Sillah v Tanvir* (18 AD3d 223 [2005]), the Appellate Division, First Department, sustained the election of the trustees of the Islamic Falah of America. This proceeding presents the same issues.

The appellants contend that the election they conducted for members of the board of directors of the Congregation Yetev Lev D'Satmar, Inc. (hereinafter the Congregation), is valid and consistent with the bylaws, and that the election conducted by the respondents is invalid. The respondents contend to the contrary. The issues raised on both sides relate to the authority by which the election was called, who was entitled to vote in the election, and the manner in which the election was conducted. As I see it, all of these issues can be determined by reference to the Congregation's certificate of incorporation and bylaws and, to the extent necessary, the relevant provisions of the Religious Corporations Law and the Not-for-Profit Corporation Law. Since this body of law provides the neutral principles upon which the dispute before us can be resolved (*see Sillah v Tanvir, supra; Matter of Venigalla v Alagappan, supra; Watson v Christie*, 288 AD2d 29 [2001]; *Matter of Kaminsky, supra*), the respondents' claim that the dispute is nonjusticiable must be rejected.

The situation presented here differs from prior similar cases only in that the respondents' opposition to the petition rests not merely on their claims of noncompliance with the bylaws, but on their assertion that it is a tenet of the faith shared by all parties that the Grand Rebbe is the ultimate authority in all matters involving the Congregation, whether religious or secular. Based upon such authority, the respondents contend that the election at which the appellants were successful is a nullity because the Grand Rebbe had removed Berl Friedman, the leader of the appellants' faction, from the board of directors, and therefore ousted him as the Congregation's president, prior to the date on which he called the meeting of the board of directors at which the election committee that conducted that election was appointed, thereby rendering the actions taken at that meeting invalid. In addition, the respondents assert that after

that meeting of the board of directors, but prior to the election, the Grand Rebbe expelled Berl Friedman and all who participated in the meeting from the Congregation, thereby precluding them, even if the election had been validly called, from standing as candidates for the board of directors. Finally, the respondents contend that even without regard to the result of the election conducted by the appellants, the petition must be dismissed because the Grand Rebbe certified the results of the election that the respondents conducted, thereby rendering the results of that election incontestable as a matter of faith and beyond the reach of a secular court to adjudicate.

The Supreme Court dismissed the proceeding without reaching the substantive issues, finding, apparently as a matter of fact, the basis for which is not recited in the decision, that "[a]ll Satmar Chasidim, wherever situated, paid homage to the Grand Rebbe and acknowledged him to be their incontrovertible leader and the sine qua non for being labeled with the appellation Satmar" and that "[d]efiance of the Grand Rebbe would seem to constitute blasphemy." In my view, the Supreme Court was wrong, both in making a determination as to the tenets of the parties' faith and in finding it to be dispositive.

To begin with, even assuming that the Grand Rebbe has the secular authority ascribed to him by the respondents, the appellants deny that the Grand Rebbe spoke the words he is alleged to have spoken removing Berl Friedman from the board of directors and expelling Friedman and his colleagues from the Congregation, and also deny that the Grand Rebbe executed the document that he is alleged to have signed confirming the respondents' election. It certainly requires no inquiry into religious doctrine to ascertain whether the Grand Rebbe said and did what he is purported to have said and done. Thus, in this regard, at least, this proceeding presents no nonjusticiable religious dispute. Since there is support in the record for the position taken by the appellants in this regard, there is a justiciable issue of fact as to whether the Grand Rebbe removed Berl Friedman from the board of directors, expelled Friedman and those who sided with him from the Congregation, and certified the respondents' election. On this basis alone, the order and judgment of the Supreme Court must be reversed insofar as appealed from.

Even if the appellants had conceded, however, that the Grand Rebbe did what he is alleged by the respondents to have done, a justiciable issue would nonetheless be presented, as I see it, with respect to the authority of the Grand Rebbe to do those things. Where the existence of authority within a religious

corporation is contested, and that issue can be resolved by reference to the bylaws of the corporation, there are neutral principles of law on which the contest can be resolved and the issue may be determined by civil courts (*see Matter of Ionescu v Barbu*, 255 AD2d 584 [1998]; *Matter of Kissel v Russian Orthodox Greek Catholic Holy Trinity Church of Yonkers*, 103 AD2d 830 [1984]). Even an issue as to membership in a religious congregation is justiciable (*see Watson v Christie, supra*), unless resolution of the issue requires the adjudication of a doctrinal dispute (*see Park Slope Jewish Ctr. v Stern*, 128 AD2d 847, 848 [1987]). There is no such dispute here. No one is claiming, for example, that Berl Friedman was expelled from the Congregation because he no longer believes in the religious principles of the Torah, or that he had come to believe that the messiah was no longer to be awaited. Rather, the only complaint regarding Berl Friedman that led to his purported removal from the board of directors and expulsion from the Congregation was his alleged unwillingness to abide by the purported rulings of the Grand Rebbe with respect to the governance of the secular corporate affairs of the Congregation.

In my view, the bylaws of the Congregation here provide the neutral principles of law upon which the authority of the Grand Rebbe with regard to the corporate governance of the Congregation can be determined. The bylaws clearly invest the board of directors, rather than the Grand Rebbe, with the authority to manage the secular affairs of the Congregation. Article 7 of the bylaws identifies the elected officers as "the governing body of the Congregation" or "the leadership of the Congregation," depending upon which translation is accepted. In addition, article 9 of the bylaws provides that it is the board of directors that has "the right to decide all business of the congregation."

The secular authority of the Grand Rebbe, addressed in article 8 of the bylaws, is not as clear. After identifying the Grand Rebbe as "our local rabbi" and establishing him as the spiritual authority of the Congregation, the bylaws provide, according to the most widely-accepted translation, that: "Nobody can perform his functions without his consent. He is the only authority in all spiritual matters. No rabbi, ritual slaughterer or teacher can be chosen without his consent. His decision is binding on every member." The respondents argue that this provision, and particularly its final sentence, subject all of the corporate actions of the Congregation, religious and secular, to the control of the Grand Rebbe, thereby empowering him to remove members of the board of directors, expel members of the Congregation, and certify elections, even though none of

those powers are granted to him explicitly in the bylaws. The petitioners, on the other hand, read this provision as establishing the Grand Rebbe as the spiritual authority of the Congregation, but not as investing him with any secular authority over the Congregation's corporate affairs.

Whether this provision of the bylaws empowers the Grand Rebbe to remove members of the board of directors, expel members of the Congregation, and certify elections, is the crux of the dispute and a subject of intense debate. The fact that the bylaws are subject to differing constructions in this regard, however, and that both sides can point to facts supporting their respective contentions as to the meaning of the bylaws, does not, in my view, defeat the justiciability of the dispute. Rather, as I see it, the critical fact, sufficient in itself to resolve the issue of justiciability, is that the bylaws address, in some fashion, the Grand Rebbe's role in corporate governance.

For whatever reason, the Congregation chose early in its history to establish itself as a religious corporation, and in doing so to adopt bylaws that define the manner in which the temporal affairs of the Congregation are to be governed. In the course of doing so, those bylaws also establish the role of the Grand Rebbe in that governance. By thus defining the role of the Grand Rebbe in a secular legal document, the Congregation provided the "neutral principles of law" upon which the extent of his secular authority can be determined. Since those terms, once construed, are sufficient to resolve this dispute, it was, in my view, neither necessary nor permissible for the Supreme Court to address the issue of the Grand Rebbe's authority on the basis of what it perceived to be the tenets of the faith.

The bylaws of a not-for-profit corporation are in the nature of a contract between the members of the corporation and the corporation itself (*see Matter of George v Holstein-Friesian Assn. of Am.*, 238 NY 513, 523 [1924]; *Procopio v Fisher*, 83 AD2d 757, 758 [1981]). The construction of ambiguous provisions in corporate by-laws is thus a judicial function (*see Matter of Jacobson v Moskowitz*, 27 NY2d 67, 69 [1970]; *Carney v New York Life Ins. Co.*, 162 NY 453, 454-455 [1900]; *Matter of Bogart*, 215 App Div 45 [1925]). The court's role in such circumstances is to construe the by-laws in accordance with the perceived intent of the drafter (*see Matter of O'Driscoll v Moran*, 13 AD3d 156 [2004]; *Procopio v Fisher, supra* at 758; *Model, Roland & Co. v Industrial Acoustics Co.*, 21 AD2d 70, 72 [1964] *affd* 16 NY2d 703 [1965]). That intent can be gleaned from many sources, including the plain language of the provision at issue (*id.*), and the manner in which the provision has been applied

in practice over time (*see Matter of Flushing Hosp. & Dispensary*, 288 NY 125, 131 [1942]). Such sources are available here and have been laid out in great length in the voluminous papers submitted to the Supreme Court.

The fact that the respondents assert their claim with respect to the authority of the Grand Rebbe on the basis of their understanding of religious doctrine is not, by itself, sufficient to defeat this inquiry. To resolve this matter in the respondents' favor on that basis is not permissible. To do so "would permit any party to contend that religious doctrine that it deems authoritative undermines the authority of its adversary's position" (*Merkos L'inyonei Chinuch, Inc. v Otsar Sifrei Lubavitch, Inc.*, 312 F3d 94, 100 [2002]). It is conceivable, given the nature of the provision at issue here, that it will be necessary in order to understand the intent of the drafters to consider the broader role that the Grand Rebbe plays in the life of the Congregation. Nevertheless, at this stage of the proceedings, it is not possible to conclude that such an inquiry is inevitable or that it will necessarily involve an impermissible foray into the tenets of the faith. Should it become apparent that it is impossible to proceed without consideration of religious doctrine, the inquiry will be foreclosed. Until that time, it must, in my view, be pursued.

The respondents' remaining argument is that the courts should refrain from exercising jurisdiction over this dispute because what is really at issue here is the succession to the position of Grand Rebbe of the Congregation. While that religious dispute unquestionably constitutes the background against which this litigation is being played out, it is not the issue that is presented here. This is a proceeding pursuant to Not-for-Profit Corporation Law § 618. The only issue is the respective validity of competing elections to the Congregation's corporate board of directors. Unlike the situation presented in *Congregation Beth Yitzhok v Briskman* (566 F Supp 555 [1983]), determination of the rabbinical succession is neither necessary, nor relevant, to the resolution of that issue. Because the statute entitles the litigants to such a resolution by the Supreme Court and there is, in my view, no constitutional impediment, at least at this juncture, to making that determination, I would remit the matter to the Supreme Court, Kings County, to comply with its statutory obligation.