OPINION OF THE COURT
Peters, P.J.
On October 29, 2005, plaintiff and defendant were married in a ceremony performed by a minister of the Universal Life Church (hereinafter ULC) in the Town of Jackson, Washington County. Three days earlier, the parties had executed an ante-nuptial agreement which, by its terms, was to take effect “only upon the solemnization of [the] marriage.” Five years after the marriage, plaintiff commenced this action seeking a declaration that the marriage was void from its inception, and that the antenuptial agreement was thus unenforceable, because the officiant lacked authority under the Domestic Relations Law to solemnize the marriage. Alternatively, plaintiff sought a divorce as well as enforcement of the antenuptial agreement and equitable distribution of the parties’ assets. Defendant answered, denying that the marriage was invalid and asserting a counterclaim for divorce. Plaintiff then moved for summary judgment on his declaratory judgment claim and defendant cross-moved for summary judgment, arguing that plaintiff had not carried his burden of proving the invalidity of the marriage and seeking a declaration that the antenuptial agreement was void on differ *47 ent grounds. Concluding that it was constrained by the holdings in Ranieri v Ranieri (146 AD2d 34 [1989], lv dismissed 74 NY2d 792 [1989]) and Ravenal v Ravenal (72 Misc 2d 100 [1972]) to find the marriage void as a matter of law, Supreme Court granted plaintiffs motion and denied defendant’s cross motion. Defendant appeals.
Initially, defendant contends that plaintiff should be estopped from arguing that the marriage was void because such position is contrary to representations he made on the parties’ joint tax returns. As defendant correctly notes, a party to litigation may be estopped from asserting a position contrary to that taken on his or her tax returns (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 422 [2009]; Naghavi v New York Life Ins. Co., 260 AD2d 252, 252 [1999]). However, a marriage that is void “cannot be retroactively validated by estoppel, by mutual agreement, or by the parties’ conduct in holding themselves out as husband and wife” (Lipschutz v Kiderman, 76 AD3d 178, 183 [2010]; see Landsman v Landsman, 302 NY 45, 48 [1950]; see also People v Kay, 141 Misc 574, 578 [1931]). Thus, Supreme Court correctly found that plaintiff was not estopped from challenging the validity of the marriage.
Addressing the merits, we first note that, inasmuch as Ranieri v Ranieri (supra) was the only appellate decision in this state addressing the question of whether a minister of the ULC has authority under New York law to solemnize a marriage, Supreme Court was bound to follow it (see Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [1984]). This Court, however, is not so constrained (id. at 664-665), and we decline to follow the Second Department’s determination. Ranieri was decided a quarter-century ago, and we simply cannot presume that the belief system, structure and inner workings of the ULC have remained static since that time. With the issue having resurfaced, we find it appropriate to address it anew.
Having moved for summary judgment on his cause of action to declare the marriage null and void, plaintiff had the burden to submit competent evidence sufficient to demonstrate the absence of all material issues of fact (see CPLR 3212 [b]; Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]; Wine-grad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Finding that plaintiff failed to meet that burden, we now reverse the grant of summary judgment in his favor.
Domestic Relations Law § 11 provides that “[n]o marriage shall be valid” unless it is solemnized by, among others, “a *48 clergy[ ] [member] or minister of any religion” (Domestic Relations Law § 11 [1]). Pursuant to the Religious Corporations Law, the terms clergy member and minister include “a person having authority . . . from the church or synagogue to preside over and direct the spiritual affairs of the church or synagogue” (Religious Corporations Law § 2). The statute defines an “unincorporated church” as a “congregation, society, or other assemblage of persons who are accustomed to statedly meet for divine worship or other religious observances, without having been incorporated for that purpose” (Religious Corporations Law § 2). Thus, the inquiry here distills to (1) whether the officiant of the parties’ marriage was authorized by the ULC to preside over and direct its spiritual affairs, and (2) whether the ULC is a “church” within the meaning of the statute.
With respect to the former, plaintiffs own submissions, which included the officiant’s “Credentials of Ministry,” establish that the officiant was ordained a minister of the ULC in August 2000 and remains in good standing. Furthermore, documents submitted from the ULC’s website state that those ordained as a minister by the ULC are authorized to perform weddings, baptisms and funerals and to otherwise conduct religious services through the ULC. Indeed, plaintiff concedes that the officiant is a minister of the ULC and has not presented any proof assailing her authority to conduct the spiritual affairs of the ULC. Plaintiff, instead, stresses the unconventional nature of the method employed by the ULC in selecting its ministers in an ostensible attempt to undermine the legitimacy of authority bestowed upon its ministers. However, judicial involvement is permitted only when the issue can be resolved by application of neutral principles of law (see Matter of Congregation Yetev Lev D’Satmar, Inc. v Kahana, 9 NY3d 282, 285-286 [2007]) and, other than determining whether the ULC adhered to its own rules and regulations in selecting and ordaining the officiant as a minister, it is not the role of the courts to question the ULC’s membership requirements or the method by which it selects its ministers (see id. at 287-288; Matter of Congregation Yetev Lev D’Satmar, Inc. v Kahana, 31 AD3d 541, 542 [2006], affd 9 NY3d 282 [2007]; Park Slope Jewish Ctr. v Stern, 128 AD2d 847, 848 [1987] , appeals dismissed 70 NY2d 746 [1987], 72 NY2d 873 [1988] ; Matter of Kissel v Russian Orthodox Greek Catholic Holy Trinity Church of Yonkers, 103 AD2d 830, 831 [1984]).
With respect to the question of whether the ULC constitutes a “church” within the meaning of the Religious Corporations *49 Law, the affidavits from plaintiff and his attorney merely aver, “upon information and belief,” that the ULC does not have an actual church or stated place of worship. Such allegations are without probative value (see Lockwood v Layton, 79 AD3d 1342, 1344 [2010]; Anderson v Livonia, Avon & Lakeville R.R. Corp., 300 AD2d 1134, 1135 [2002]; Onondaga Soil Testing v Barton, Brown, Clyde & Loguidice, 69 AD2d 984, 984 [1979]). Moreover, the statement from the ULC’s website that “the communication and fellowship of our ministers is equal to the once a week sacramonious [sic] fellowship in some of our most segregated and elitist churches” is, at best, ambiguous as to whether members of the ULC are accustomed to meet for divine worship or other religious observances (see Religious Corporations Law § 2). In any event, even had plaintiff sustained his initial burden on this point, we would find that defendant’s submissions in opposition to the motion, which included an affidavit from the president of the ULC attesting that the ULC has numerous places of worship throughout New York State as well as a list of such congregations, raise genuine factual issues precluding an award of summary judgment.
Plaintiff’s assertion that the ULC professes no belief to distinguish its church as a religion provides no basis to conclude, as a matter of law, that the ULC is not a church within the meaning of the Religious Corporations Law (see Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn. of City of N.Y., 55 NY2d 512, 518 [1982] [stating that “the courts may not inquire into or classify the content of the doctrine, dogmas, and teachings held by (a) body to be integral to its religion but must accept that body’s characterization of its own beliefs and activities and those of its adherents, so long as that characterization is made in good faith and is not sham”]; see also Matter of O’Neill, 2008 Pa Dist & Cnty Dec LEXIS 135, *12 [Ct Common Pleas, Bucks County, Dec. 31, 2008, No. 08-01620-29-1]). In some respects, the ULC conducts itself like more conventional churches and encompasses many of the same ideas and values that are present in traditional religions. The ULC ordains ministers and, although ministers are not required to preside over a specific congregation or work within a physical church, the ULC encourages that practice. Additionally, since the ULC’s formation in 1959, it has consistently advanced and advocated for its beliefs.
Accordingly, we find that plaintiff failed to establish as a matter of law that the officiant did not have authority to solemnize *50 the parties’ marriage, thus warranting denial of his motion. While defendant urges us to search the record and grant summary judgment in her favor (see CPLR 3212 [b]; Dunham v Hilco Constr. Co., 89 NY2d 425, 429-430 [1996]; Kropp v Town of Shandaken, 91 AD3d 1087, 1091 [2012]), such relief is not available on the limited record before us, as genuine issues of fact remain.
Finally, defendant argues that Supreme Court erred by failing to address her claim that she was entitled to equitable distribution even if the marriage was void. In light of our determination, we need not reach the merits of such claim. However, we note that Supreme Court must address the merits thereof if it again determines, on remittal, that the marriage is void.
Rose, Stein and Egan Jr., JJ., concur.
Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiffs motion for summary judgment; motion denied; and, as so modified, affirmed.