[947 NE2d 1169, 923 NYS2d 391]

RYAN P. ST. LOUIS, Respondent, v TOWN OF NORTH ELBA et al., Appellants.

Argued February 10, 2011; decided March 31, 2011

**POINTS OF COUNSEL**

*Roemer Wallens Gold & Mineaux, LLP*, Albany (*Matthew J. Kelly* of counsel), for appellants. Plaintiff cannot rely on 12 NYCRR 23-9.4 as the basis for his Labor Law § 241 (6) claim because the provisions of that regulation do not apply to a front-end loader being used as a material hoist. (*Morris v Pavarini Constr.*, 9 NY3d 47; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513; *Long v Forest-Fehlhaber*, 55 NY2d 154; *Nagel v D & R Realty Corp.*, 99 NY2d 98; *Morton v State of New York*, 15 NY3d 50; *Rivera v Santos*, 35 AD3d 700; *Fitzgerald v New York City School Constr. Auth.*, 18 AD3d 807; *Dzieran v 1800 Boston Rd., LLC*, 25 AD3d 336; *Ryder v Mount Loretto Nursing Home*, 290 AD2d 892; *Giordano v Forest City Ratner Cos.*, 43 AD3d 1106.)

*Pennock, Breedlove & Noll, LLP*, Clifton Park (*Sarah I. Goldman* of counsel), for respondent. I. 12 NYCRR subpart 23-9 is the proper regulation in the instant action as the front-end loader used to suspend the pipe was power-operated heavy equipment and machinery used in construction. (*Smith v Hovnanian Co.*, 218 AD2d 68; *Borowicz v International Paper Co.*, 245 AD2d 682; *Copp v City of Elmira*, 31 AD3d 899.) II. Defendant's contention that there is a split of authority between the appellate departments is not accurate. III. 12 NYCRR 23-6.1 is inapplicable as the regulation specifically excludes excavating

machines used as material hoists. (*Adams v Glass Fab*, 212 AD2d 972; *Cardenas v American Ref-Fuel Co. of Hempstead*, 244 AD2d 377; *Giordano v Forest City Ratner Cos.*, 43 AD3d 1106; *Ryder v Mount Loretto Nursing Home*, 290 AD2d 892; *Rivera v Santos*, 35 AD3d 700; *Locicero v Princeton Restoration, Inc.*, 25 AD3d 664.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

Plaintiff Ryan St. Louis was injured while employed as a maintenance worker at the MacKenzie-Intervale Olympic Jumping Complex in Lake Placid. At the time of his injury, St. Louis was assisting a work crew that was constructing a drainage pipeline by welding together and laying 20-foot sections of snow-making pipe. The crew utilized a hydraulic-operated clamshell bucket attached to the bucket arm of a front-end loader to lift sections of the pipe approximately four feet above the ground and then hold the pipe in place in the jaws of the clamshell. Suspending one end of the pipe section in the air during the welding enabled the crew to reach the underside of the jointed sections.

After a crew member finished welding two pipe sections, St. Louis began hitting the welded seam with a hammer to remove excess metal, when suddenly the jaws of the clamshell bucket opened and released the pipe. The pipe pinned St. Louis to the ground, causing serious injury to his legs and feet. Although the members of the work crew later testified that they ordinarily used chains to secure loads in the clamshell bucket, at the time of the injury, there was no chain, rope or any other safety device to prevent the pipe from falling in the event of machine malfunction.

St. Louis commenced this action for damages, alleging, among other things, that defendant Town of North Elba, the owner of the Olympic Complex, had violated Labor Law § 241 (6), which "requires owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501-502 [1993] [internal quotation marks omitted]). Since section 241 (6) imposes a nondelegable duty on property owners, plaintiff need not show that defendants exercised supervision or control over the work site in order to establish a right of recovery under section 241 (6) (*see*

*Allen v Cloutier Constr. Corp.*, 44 NY2d 290, 300 [1978]). Nonetheless, comparative negligence remains a cognizable affirmative defense to a section 241 (6) cause of action (*see Long v Forest-Fehlhaber*, 55 NY2d 154, 160-161 [1982]).

In order to state a claim under section 241 (6), a plaintiff must allege that the property owners violated a regulation that sets forth a specific standard of conduct and not simply a recitation of common-law safety principles (*see e.g. Ross*, 81 NY2d at 501-502). Here, plaintiff rests his section 241 (6) claim on a violation of 12 NYCRR 23-9.4 (e).

Section 23-9.4 falls within subpart 23-9 of the Industrial Code, which is entitled "Power-Operated Equipment." Section 23-9.1 ("Application of this Subpart") specifies that "[t]he provisions of [subpart 23-9] shall apply to power-operated heavy equipment or machinery used in construction, demolition and excavation operations." Following this statement of applicability are nine sections covering specific kinds of power-operated heavy equipment or machinery, which do not mention "loaders" or "front-end loaders." Section 23-9.4 itself provides:

> "Where power shovels and backhoes are used for material handling, such equipment and the use thereof shall be in accordance with the following provisions: . . .
>
> "(e) Attachment of load.
>
> "(1) Any load handled by such equipment shall be suspended from the bucket or bucket arm by means of wire rope having a safety factor of four.
>
> "(2) Such wire rope shall be connected by means of either a closed shackle or a safety hook capable of holding at least four times the intended load."

In its motion papers, defendants challenged the use of section 23-9.4 as a predicate for a section 241 (6) claim, arguing, among other things, that section 23-9.4 only mentions "power shovels and backhoes" and therefore cannot be extended to include "front-end loaders."

Supreme Court denied defendants' motion for summary judgment, concluding that the provisions of section 23-9.4 (e) cover front-end loaders when used in the manner and circumstances presented. The court relied on *Copp v City of Elmira* (31 AD3d 899 [3d Dept 2006]), which held that section 23-9.4 applies to a "payloader" used to elevate construction material:

"The regulation clearly addresses situations in which construction equipment is used to lift materials and sets forth pertinent safety standards. The term power shovel is not separately defined and *where, as here, construction equipment is used to attempt to accomplish the same task as a power shovel, it would be inconsistent with the purpose of the regulation and cause an objectionable result to find the safety precautions regarding lifting materials inapplicable* (*see Matter of ATM One v Landaverde*, 2 NY3d 472, 476-477 [2004])" (31 AD3d at 900 [emphasis added]).

The Appellate Division affirmed, rejecting defendants' argument that section 23-9.4 cannot apply to a front-end loader. The court found "the manner in which the equipment is used rather than its name or label" to be the touchstone in assessing the applicability of a particular Code section (*see* 70 AD3d 1250, 1251 [2010], citing *Copp*, 31 AD3d at 900, *Borowicz v International Paper Co.*, 245 AD2d 682, 684 [3d Dept 1997], and *Smith v Hovnanian Co.*, 218 AD2d 68, 71 [3d Dept 1995]).

The Appellate Division subsequently granted permission to appeal to the Court of Appeals upon the certified question of whether the court had erred in affirming the motion court.

We now answer the certified question in the negative and affirm the Appellate Division order upholding the denial of summary judgment.

As an initial matter, we agree that subpart 23-9 of the Code, which applies to "power-operated heavy equipment or machinery used in construction," extends to a front-end loader being used to construct a drainage pipeline. A front-end loader is undeniably "power-operated heavy equipment." Moreover, the Code's definition of "construction work" expressly includes "pipe and conduit laying" (12 NYCRR 23-1.4 [b] [13]).

Further, we agree that the safety requirements of this section appropriately extend to the case of a front-end loader that is enlisted to do the material handling that is otherwise performed by power shovels and backhoes. Although the Code does not enumerate each piece of heavy equipment that can be operated to suspend materials from its bucket or bucket arm, section 23-9.4 (e) was clearly drafted to reduce the threat posed by heavy materials falling from buckets by requiring loads to be fastened with sturdy wire, proportionate to the weight of the load. The same danger that exists for a worker using a power shovel or

backhoe with an unsecured load exists for a worker using a front-end loader with an unsecured load. We furthermore note the record indicates testimony that the workers normally secured materials in the bucket by use of metal chain, and the accident report stated that the injury could have been prevented by "us[ing] chain on pipe." Thus, it is apparent that material hoisting with a front-end loader is associated in the trade with the same known risks as other power-operated machinery used in this manner.

The Industrial Code should be sensibly interpreted and applied to effectuate its purpose of protecting construction laborers against hazards in the workplace (*see e.g. Allen v Cloutier Constr. Corp.*, 44 NY2d at 300 ["Doubtless this duty (imposed by Labor Law § 241) is onerous; yet, it is one the Legislature quite reasonably deemed necessary by reason of the exceptional dangers inherent in connection with 'constructing or demolishing buildings or doing any excavating in connection therewith' "]). Accordingly, the preferred rule both as a matter of statutory interpretation and as a reinforcement of the objectives of the Industrial Code is to take into consideration the function of a piece of equipment, and not merely the name, when determining the applicability of a regulation. This approach accounts for those circumstances where a slightly different machine is utilized for the same risky objective that is perhaps more frequently or more efficiently achieved by the machine designated by name in the Code.

We therefore hold that the Appellate Division did not err in its conclusion that a front-end loader used to suspend dangerous construction materials from its bucket arm should demand the same safety precautions as required for other power-operated heavy equipment performing the same function. It now remains for a jury to determine the remaining factual issues, including proximate cause and comparative negligence.

Accordingly, the order should be affirmed, with costs, and the certified question answered in the negative.

SMITH, J. (dissenting). The majority's decision can only confuse what until now has been our consistent, if rather complicated, approach to actions brought under Labor Law § 241 (6). That statute says:

> "All areas in which construction, excavation or demolition work is being performed shall be so

constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner [of the Department of Labor] may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith."

I call our approach to interpreting the statute complicated because, as we explained in *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494, 501-505 [1993]), we have in essence subdivided section 241 (6). *Ross* says: "Labor Law § 241 (6) is, in a sense, a hybrid, since it reiterates the general common-law standard of care and then contemplates the establishment of specific detailed rules through the Labor Commissioner's rule-making authority" (*id.* at 503).

Responding to the dual nature of the statute, we have separated the first sentence from the second, holding that the second sentence, but not the first, may "create duties that are nondelegable" in the sense that liability for breach of those duties may be imposed even on owners and contractors who exercise no supervision or control over the activity in question (*id.*). In other words, a worker injured through a breach of the generalized standard of care stated in the first sentence does not have a cause of action against entities that do not supervise or control the work, but if the injury results from a violation of the "specific detailed rules" contemplated by the second sentence, no barrier to such a suit exists.

To complicate matters further, a cause of action will exist only where the Commissioner has indeed promulgated "specific detailed rules"—not where she has merely broadly restated a duty of care, using such words as "reasonable and adequate protection and safety" (*id.* [internal quotation marks and citation omitted]). The bottom line is that a plaintiff may sue a nonsupervising owner or contractor under Labor Law § 241 (6) only where the Commissioner's regulation "sets forth a specific requirement or standard of conduct" (*id.*) or mandates "compliance with concrete specifications" (*id.* at 505).

Of course, deciding whether the requirements of a particular regulation are "specific" or "concrete" enough can be tricky (*see e.g. Misicki v Caradonna*, 12 NY3d 511 [2009]). But until

today, we at least knew the starting point for the inquiry: the words of the regulation. Now the majority holds that we may disregard the words if doing so will effectuate the regulation's "purpose of protecting construction laborers against hazards in the workplace" (majority op at 416). It is therefore unimportant that the regulation in issue here is, by its plain language, applicable only to "power shovels and backhoes"; it can also be applied to a different kind of equipment, a front-end loader, because the majority does not think the difference between the kinds of equipment justifies different treatment.

Whatever the merits of this kind of "purpose-based" interpretation generally, it makes no sense at all in the context of a statute whose whole point, as we have interpreted it, is to give a remedy only for violations of a regulation's specific commands. The virtue of this approach is that it assures that all have clear notice of what the law requires; but how could the defendants in this case possibly have known, from reading 12 NYCRR 23-9.4 (e), that its requirements applied to front-end loaders? If courts can freely rewrite the regulations to give whatever protection a court thinks should be given, why not forget about the general-specific distinction explained in *Ross* and allow plaintiffs to sue owners and contractors under Labor Law § 241 (6) for any violation of the common-law standard of care?

For these reasons, I would dissent from the majority's legal conclusion even if I agreed with its factual premise—that there is no difference between a power shovel or backhoe and a front-end loader that warrants different treatment. For me, it is enough that the regulation does treat them differently. But I am also skeptical of the majority's premise. The Commissioner may well have good reasons for believing that power shovels and backhoes—which have, at least sometimes, longer arms than front-end loaders, and thus may lift their loads to a greater height—present more danger and should be regulated more strictly. Neither the record in this case nor our expertise as judges equips us to decide that question, and we should not usurp the Commissioner's authority by doing so.

Judges CIPARICK, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge SMITH dissents and votes to reverse in a separate opinion in which Judges GRAFFEO and READ concur.

Order affirmed, etc.