JOHN P. KROPP, JR., et al., Respondents, v TOWN OF SHANDAKEN, Appellant, et al., Defendants. [937 NYS2d 345]—

Garry, J.

Initially, defendant contends that summary judgment as to liability under Labor Law § 240 (1) is precluded by issues of fact as to how the accident occurred. The parties essentially agree that at the time of the accident, plaintiff was working at the bottom of a trench that was between four and eight feet deep, connecting lengths of pipe that were being lowered into the trench by an excavator operated by plaintiff's supervisor. They further agree that plaintiff was struck by an iron pipe measuring 18 inches in diameter and 18 feet long, and that fittings had been attached to one end of the pipe to permit it to be connected with a narrower pipe, resulting in a total weight of approximately 1,500 pounds. A device called a four way, consisting of a ring from which four chains with hooks on the ends were suspended, was used to lower the pipe into the trench. The ring was attached to the bucket of the excavator, and the chains were hooked to slings made of nylon straps wrapped around the pipe. While the parties agree that the pipe dropped as it was being moved, they disagree as to how far it dropped, why this occurred, and whether the hoisting equipment was adequate to meet the requirements of the task and Labor Law § 240 (1).

Plaintiff testified that, just before the accident, he did not know that the pipe was being moved. He stated that he was squatting in the trench with his back to the excavator, cleaning the end of a previously laid pipe, when he heard chains rattling overhead and stood up. He allegedly saw the pipe as it fell past the surface level of the trench, struck him in the "midsection" and legs, and pinned him briefly against the wall of the trench. Plaintiff testified that the pipe was still suspended from its slings after it struck him and that he did not know why it fell, but that his supervisor and Mark Fisher, another Merritt employee, witnessed the accident and later told him that the chains had come unhooked. Plaintiffs submitted a workers' compensation employer's report (form C-2) prepared by a Merritt employee on the day after the accident stating that the accident occurred because a "chain let go and rehooked."[1]

Steven Jacobs, a coworker, testified by affidavit that he was working in the trench near plaintiff when he saw the pipe being hoisted overhead. He stated that he moved away because he believed the load was improperly secured and that, when the pipe was six to eight feet above the bottom of the trench, he heard chains rattling and saw the pipe "drop free of the hooks" and strike plaintiff in the legs. Jacobs averred that the hooks lacked safety clips to prevent them from coming loose, and that Merritt had used this hoisting method only because it did not have an "OSHA-approved" clamp large enough for the 18-inch pipe. Plaintiffs' expert, a board-certified safety professional, opined that the accident was caused by the use of improper hoisting equipment that failed to properly balance and secure the pipe, allowing it to slip unexpectedly in its bindings, drop downward at one end, and strike plaintiff. He opined that tag lines, hooks fitted with safety self-closing latches, and an 18-inch pipe clamp, among other things, should have been used. We agree with Supreme Court that the foregoing evidence was sufficient to establish on a prima facie basis that plaintiff's injury arose from an elevation-related hazard, that defendant failed to provide adequate safety devices, and that the failure proximately caused the injury (see Labor Law § 240 [1]; *Georgia v Urbanski*, 84 AD3d 1569, 1569 [2011]; *Jock v Landmark Healthcare Facilities, LLC*, 62 AD3d 1070, 1071-1072 [2009]).

Defendant contends that triable issues of fact exist based on

---

1. Defendant's claim that the report was not properly authenticated was raised for the first time on appeal and is therefore unpreserved (see *Saratoga Assoc. Landscape Architects, Architects, Engrs. & Planners, P.C. v Lauter Dev. Group*, 77 AD3d 1219, 1221 n [2010]; *Matter of Mitchell WW. [Andrew WW.]*, 74 AD3d 1409, 1411 [2010]).

the sharply different accounts of the accident offered by the other witnesses and its expert. Plaintiff's supervisor, who had a "bird's-eye" view of the trench from within the excavator, and Fisher, who was standing on the surface beside the trench, testified that before the pipe was hoisted, plaintiff was standing in the trench, facing the excavator, and that he signaled to the supervisor to move the pipe. The supervisor allegedly operated the excavator's bucket to raise the pipe about one foot off the ground and position it over the trench; Fisher then helped to guide the pipe as it was lowered into the trench. They testified that plaintiff put his hands on the pipe to guide it into place when the pipe was at the approximate level of his waist, and that the end of the pipe to which the fittings had been attached then dropped downward about one foot, striking plaintiff in the leg. Both testified that the hooks were equipped with safety clips and did not detach from the slings, and that the pipe was still suspended from the chains and slings after the accident occurred. Fisher testified that plaintiff did nothing to cause the accident, and that it was a "possibility" that the pipe slipped sideways in the sling before it dropped. Although the supervisor testified that the pipe "slid," he also testified that he did not know if it had slipped, and he believed that plaintiff caused the pipe to drop by pushing downward on it with his hands. Defendant's expert engineer opined by affidavit that the hoisting mechanism was adequate and appropriate for the circumstances, and the accident occurred because plaintiff altered the balance of the load when he pushed on the pipe.[2]

Initially, we agree with Supreme Court that summary judgment in plaintiffs' favor is not precluded by the discrepancies in the witness accounts as to the distance of the pipe's fall. Despite defendant's contention that a one-foot drop, if proven, would be "de minimis" and thus outside the scope of protection of Labor Law § 240 (1) (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 270 [2001]), the dispositive inquiry is not merely how far the

**2.** Defendant's expert based his opinion that no failure of the hoisting equipment occurred on his conclusion that the pipe did not drop downward before striking plaintiff, but instead "moved laterally." However, all of the witnesses stated that the pipe fell downward, differing only as to the extent of the drop. Accordingly, we agree with Supreme Court that the expert's conclusion on this point is unsupported by an evidentiary foundation and without probative force (*see Ann JJ. v Schenectady Assn. for Retarded Citizens*, 59 AD3d 772, 773 [2009]). Nonetheless, the expert's opinion that the hoisting equipment was appropriate for the task was not based on this determination, but instead on his professional experience, and his opinion that plaintiff altered the balance of the pipe by pushing on it was based on the supervisor's testimony that plaintiff did so; accordingly, these aspects of his opinion are sufficiently supported to warrant consideration.

pipe fell, but "whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a *physically significant elevation differential*" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009] [emphasis added]). The accident occurred while the 1,500-pound pipe in question was being lowered at least five or six feet into the trench where plaintiff was working; even if, as defendant contends, it did not fall until near the end of its descent and dropped only one foot before it struck plaintiff, such an elevation differential "cannot be viewed as de minimis, particularly given the weight of the object and the amount of force it was capable of generating" (*id.* at 605; *see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 10 [2011] [standing metal pipes fell four feet]; *Harris v City of New York*, 83 AD3d 104, 110 [2011] [one-ton concrete slab fell three or four feet]; *Pritchard v Tully Constr. Co., Inc.*, 82 AD3d 730, 730-731 [2011] [300-pound motor fell three feet]; *Gutman v City of New York*, 78 AD3d 886, 886-887 [2010] [1,300-pound rail fell 12 to 16 inches]; *Brown v VJB Constr. Corp.*, 50 AD3d 373, 376 [2008] [1,000-pound stone slab fell three feet]; *see also Ortlieb v Town of Malone*, 307 AD2d 679, 679-680 [2003] [850-pound pipe rolled 15 feet down a slope and then fell three feet into a trench]). The accident was attributable to " 'the pronounced risks arising from construction work site elevation differentials' " and thus falls within the scope of Labor Law § 240 (1) (*Davis v Wyeth Pharms., Inc.*, 86 AD3d 907, 909 [2011], quoting *Runner v New York Stock Exch., Inc.*, 13 NY3d at 603). However, the conflicting expert opinions as to the adequacy of the hoisting equipment and the divergent testimony as to whether safety clips were present on the hooks, and whether the accident occurred because these hooks came loose, because the pipe slipped in its slings or because plaintiff altered its balance by pushing on it, pose issues of fact as to whether the absence or inadequacy of a safety device proximately caused plaintiff's injuries. Thus, plaintiffs' motion for partial summary judgment should not have been granted on the Labor Law § 240 (1) cause of action (*see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d at 11; *Quattrocchi v F.J. Sciame Constr. Corp.*, 11 NY3d 757, 759 [2008]; *Beardslee v Cornell Univ.*, 72 AD3d 1371, 1372 [2010]).

Defendant next contends that Supreme Court should have granted its cross motion for summary judgment dismissing plaintiffs' cause of action under Labor Law § 241 (6). "To establish a claim under Labor Law § 241 (6), plaintiff[s] must allege that defendants violated a rule or regulation promulgated by the Commissioner of Labor that sets forth a specific standard of conduct" (*St. Louis v Town of N. Elba*, 70 AD3d 1250, 1250

[2010], *affd* 16 NY3d 411 [2011]; *see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501-502 [1993]). As plaintiffs concede, two of the regulations on which they rely are insufficiently specific to support a Labor Law § 241 (6) claim (*see* 12 NYCRR 23-1.5, 23-4.2 [k]; *Weinberg v Alpine Improvements, LLC*, 48 AD3d 915, 918 [2008]; *Friot v Wal-Mart Stores*, 240 AD2d 890, 891 [1997]). However, plaintiffs further allege that defendant violated 12 NYCRR 23-9.4 (e) by failing to use wire rope fitted with safety self-closing latches to suspend the pipe from the excavator's bucket. The disagreement between the parties' respective experts as to whether wire rope was appropriate to suspend this particular pipe, and whether the hooks were equipped with appropriate safety latches, presents factual issues to be resolved at trial (*see Deshields v Carey*, 69 AD3d 1191, 1194 [2010]; *Copp v City of Elmira*, 31 AD3d 899, 900 [2006]). Further, the conflicting testimony as to how the accident occurred presents factual issues as to whether, as plaintiffs' expert alleges, defendant violated 12 NYCRR 23-9.4 (h) (5) by "[c]arrying or swinging" the suspended pipe over the area where plaintiff was working. We reject plaintiffs' additional contention that certain provisions of 12 NYCRR subpart 23-8, pertaining to mobile cranes, tower cranes and derricks, are applicable because the excavator was being used in the same manner as a mobile crane. The safety requirements of 12 NYCRR 23-9.4 are applicable to the excavator, which was being used at the time of the accident "in the manner of a power shovel in attempting to elevate construction material" (*Copp v City of Elmira*, 31 AD3d at 900; *see* 12 NYCRR 23-9.1, 23-9.5; *St. Louis v Town of N. Elba*, 16 NY3d 411, 415-416 [2011]). "[C]ranes and derricks" are explicitly excluded from the coverage of 12 NYCRR subpart 23-9 (12 NYCRR 23-9.1). An excavator that is functioning in the same manner as a power shovel and is therefore subject to the requirements of 12 NYCRR 23-9.4 cannot simultaneously be considered a crane for purposes of 12 NYCRR subpart 23-8 (*compare Montayne v Village of Hoosick Falls*, 26 Misc 3d 1201[A], 2009 NY Slip Op 52619[U], *4-6 [2009]). Accordingly, in the interest of judicial economy, we will exercise our power to search the record and grant partial summary judgment dismissing plaintiffs' Labor Law § 241 (6) claim except to the extent that it relies on 12 NYCRR 23-9.4 (*see Shields v Carbone*, 78 AD3d 1440, 1443 n 2 [2010]; *Schultes v Kane*, 50 AD3d 1277, 1278 [2008]).

Finally, we reject defendant's contention that its motion to vacate the note of issue should have been granted because plaintiffs failed to disclose Jacobs as a witness, thus depriving defendant of the opportunity to depose him. "While a note of is-

sue will generally be stricken if the case is not ready for trial, the motion to strike can be denied where the parties had sufficient time to complete discovery" (*Ireland v GEICO Corp.*, 2 AD3d 917, 917 [2003] [citations omitted]). Here, the parties were engaged in discovery for three years, and the record reveals that defendant was aware during that time that Jacobs witnessed the accident. Payroll statements submitted to defendant in 2006 named Jacobs as a Merritt employee at the time of the accident, and Jacobs testified by affidavit that, in the months following the accident, defendant's insurer asked him several times to sign a statement, but that he refused to do so. Defendant's counsel was copied on correspondence in which plaintiffs unsuccessfully attempted to serve a nonparty witness subpoena on Merritt for the purpose of taking Jacobs' deposition. During their depositions, plaintiff and his supervisor both testified that Jacobs was in the trench when the accident occurred, and Fisher testified that he was present at the work site. Thus, the inclusion of Jacobs' affidavit in plaintiffs' October 2010 partial summary judgment motion was not defendant's first notice that Jacobs had knowledge of the accident. Moreover, in the subsequent month-long interval before the court-ordered deadline for filing the note of issue, defendant neither objected to Jacobs' affidavit nor requested an opportunity to depose him or an adjournment of the deadline; not until several weeks after the note of issue and certificate of readiness had been filed did defendant first claim that discovery was incomplete for this reason. Accordingly, Supreme Court's denial of the motion to vacate the note of issue was not an abuse of its "considerable discretion to supervise the discovery process" (*Superintendent of Ins. of State of N.Y. v Chase Manhattan Bank*, 43 AD3d 514, 516 [2007]).

Peters, J.P., Rose, Kavanagh and McCarthy, JJ., concur. Ordered that the amended order is modified, on the law, without costs, by reversing so much thereof as granted plaintiffs' motion for partial summary judgment on their Labor Law § 240 (1) cause of action; motion denied to that extent and defendant's cross motion for summary judgment partially granted by dismissing the Labor Law § 241 (6) cause of action against it except to the extent that it is based on 12 NYCRR 23-9.4; and, as so modified, affirmed.