Mann v Mezuyon, LLC
2026 NY Slip Op 03257
May 26, 2026
Court of Appeals
Troutman, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Elizabeth Mann, & c., Appellant,
v
Mezuyon, LLC, Respondent, et al., Defendant. Mayrich Construction Corp., Third-Party Respondent.

Decided on May 26, 2026
No. 39

Travis K. Wong, for appellant.
Richard W. Ashnault, for respondent Mayrich Construction Corp.
Lorin A. Donnelly, for respondent Mezuyon, LLC.

Troutman, J.

[*1]
The issue before us is whether section 23-4.2 (k) of the Industrial Code (12 NYCRR 23-4.2 [k]) is sufficiently specific to serve as a basis for vicarious liability under Labor Law § 241 (6). We hold that it is not.
I.
This case arises from an accident at a Manhattan construction site owned by Mezuyon, LLC. Excavation work was being performed at the site by Mayrich Construction Corp., which required drilling into bedrock and blasting. Several drilling rigs drilled holes for explosives, the charges were detonated, and excavators moved blast mats and removed blasted material. At the time of the accident, six drilling machines and three excavators were operating simultaneously. Original plaintiff William Mann (Mann),FN1 a Mayrich driller, was operating one of the [*2]drilling rigs. His drilling machine malfunctioned, and he called for a mechanic. While the mechanic inspected the machine, the rear of a nearby excavator swung within a few feet of Mann's rig. After the mechanic suggested relocating to a safer spot, Mann moved the drilling rig approximately 20 to 30 feet away. Unfortunately, while Mann was lowering the drill head at the mechanic's request, the back corner of an excavator rotated into him, striking him and knocking him to the ground, allegedly causing his injuries.
Mann sued defendant Mezuyon, asserting claims for common-law negligence and violations of Labor Law §§ 200, 240 (1), and 241 (6). Mann's Labor Law § 241 (6) claims were originally predicated on violations of sections 23-9.4 (h) (4) and 23-9.5 (c) of the Industrial Code. Mezuyon moved for summary judgment to dismiss the complaint. Mann opposed the motion and cross-moved to amend his bill of particulars to add section 23-4.2 (k) of the Industrial Code (12 NYCRR 23-4.2 [k]) as an additional basis for his Labor Law § 241 (6) claim. Section 23-4.2 (k) states that "[p]ersons shall not be suffered or permitted to work in any area where they may be struck or endangered by any excavation equipment."
Supreme Court granted Mann's motion to amend his bill of particulars and dismissed all of Mann's claims, except for his Labor Law § 241 (6) claim predicated on a violation of section 23-4.2 (k). Mezuyon then commenced a third-party action against Mayrich. Supreme Court granted Mayrich's subsequent motion for summary judgment and dismissed Mann's Labor Law § 241 (6) claim. The Appellate Division, First Department, affirmed, and we granted leave to appeal.
II.
Mezuyon was neither controlling nor directing Mann's work when he was injured. Consequently, Mezuyon "can be liable to [plaintiff] only if Labor Law § 241 (6) imposes on [Mezuyon] a nondelegable duty, making [it] liable for the conduct of others" (Morris v Pavarini Const., 9 NY3d 47, 50 [2007]). Labor Law § 241 (6) provides as follows:
"All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith."
We have explained that "Labor Law § 241 (6) is a 'hybrid' statute, as the first sentence 'reiterates the general common-law standard of care,' while the second sentence imposes a nondelegable duty with respect to compliance with rules of the Commissioner [of the Department of Labor] which contain 'specific, positive command[s]' " (Bazdaric v Almah Partners LLC, 41 NY3d 310, 317 [2024], quoting Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 503-504 [1993]). Because the duty set forth in the second sentence is nondelegable, plaintiffs "need not show that defendants exercised supervision or control over [the] worksite in order to establish [a] right of recovery" (Ross, 81 NY2d at 502). However, this vicarious liability is limited: "only 'provisions of the Industrial Code mandating compliance with concrete specifications' give rise to a nondelegable duty under Labor Law § 241 (6)" (Toussaint v Port Auth. of N.Y. & N.J., 38 NY3d 89, 94 [2022], quoting Ross, 81 NY2d at 505).
Consequently, in order to support a claim under Labor Law § 241 (6) predicated upon a violation of a provision of the Industrial Code, "the particular provision relied upon by a plaintiff must mandate compliance with concrete specifications and not simply declare general safety standards or reiterate common-law principles" (Misicki v Caradonna, 12 NY3d 511, 515 [2009]). In Ross, we explained that allowing a plaintiff to use a "broad, nonspecific regulatory standard as predicate for an action against a nonsupervising owner or general contractor under Labor Law § 241 (6) would seriously distort the scheme of liability for unsafe working conditions"; would render "all but superfluous" Labor Law § 200 (1)'s confinement of liability to defendants having "a direct hand, through either control or supervision, in the injury-producing work"; and would run contrary to legislative intent (81 NY2d at 504-505).
We have a number of interpretive tools at our disposal to aid us in determining if a provision of the Industrial Code contains sufficiently concrete specifications to impose vicarious liability under Labor Law § 241 (6). First, we have held that "[t]he Industrial Code should be sensibly interpreted and applied to effectuate its purpose of protecting construction laborers against hazards in the workplace" (St. Louis v Town of N. Elba, 16 NY3d 411, 416 [2011] [*3][emphasis added]). Second, "[i]n assessing whether [a] regulation is specific enough to support a Labor Law § 241 (6) claim, we examine the text without reference to the underlying facts" (Toussaint, 38 NY3d at 95, citing Misicki, 12 NY3d at 521 n 2). Third, we have held that "general regulatory criteria" in the form of words like "adequate," "designated," "competent," "effective," "good," "proper," "safe," "sufficient," and "trained" "are not sufficient to give rise to a triable claim for damages under Labor Law § 241 (6)" (Ross, 81 NY2d at 502; see Toussaint, 38 NY3d at 95; Gasques v State, 15 NY3d 869, 870 [2010]; Misicki, 12 NY3d at 520; Morris v Pavarini Const., 9 NY3d 47, 50 [2007]). Finally, as we have recently reiterated, "[a]dministrative regulations are generally subject to the same interpretive rules and canons of construction as statutes" (Cruz v Banks, — NY3d — , 2026 NY Slip Op 00821 [2026]). The Industrial Code is no different (see Nostrom v A.W. Chesterton Co., 15 NY3d 502, 507 [2010]).FN2
Section 23-4.2 (k)—the provision of the Industrial Code at issue here—provides that "[p]ersons shall not be suffered or permitted to work in any area where they may be struck or endangered by any excavation equipment or by any material being dislodged by or falling from such equipment" (12 NYCRR 23-4.2 [k]). The Appellate Division is split over whether this provision is sufficiently specific to support a Labor Law § 241 (6) claim. The First, Third, and Fourth Departments have concluded that it is not sufficiently specific (see e.g. Vicki v City of Niagara Falls, 215 AD3d 1285, 1289 [4th Dept 2023]; Mohamed v City of Watervliet, 106 AD3d 1244, 1247 [3d Dept 2013]; Sparendam v Lehr Constr. Corp., 24 AD3d 388, 389 [1st Dept 2005]). The Second Department has concluded that it is sufficiently specific (see e.g. Zaino v Rogers, 153 AD3d 763, 765 [2d Dept 2017]). Plaintiff contends that the Second Department is correct because section 23-4.2 (k) creates a specific, positive command that all contractors, owners, and their agents do not suffer or permit work in any area where people may be struck or endangered by excavation equipment. We disagree and conclude that section 23-4.2 (k) is not sufficiently specific or "concrete" enough to "give rise to a nondelegable duty under Labor Law § 241 (6)" (Toussaint, 38 NY3d at 94 [internal quotation marks omitted]).
Our caselaw demonstrates that, to be sufficiently specific to support a Labor Law § 241 (6) cause of action, a provision of the Industrial Code must both identify a specific safety concern and command a specific action required to address that concern (compare Rizzuto v L.A. Wenger Constr. Co., 91 NY2d 343, 350-351 [1998] [holding that a regulation forbidding employers from permitting employees to work on a slippery surface and requiring employers to remove any slippery substances or debris was sufficiently specific],FN3and Morris v Pavarini Const., 9 NY3d 47, 49-50 [*4][2007] [holding that a regulation requiring a "form"—e.g., a "mold used in the fabrication of concrete walls"—be "braced or tied together so as to maintain position and shape" set forth sufficiently "specific requirements"], with Gasques v State of New York, 15 NY3d 8659, 870 [2010] [holding that a regulation generally prohibiting employers from permitting employees to work with machinery not in good repair or safe working condition was insufficiently specific because it did not set forth a "specific standard of conduct" required to avoid the safety concern]).FN4
This Court's decision in Toussaint is particularly instructive because there the Court determined that a provision similar to the one at issue here was insufficiently specific (see Toussaint, 38 NY3d at 95). The plaintiff there relied on a regulation providing that "[n]o person other than a trained and competent operator designated by the employer shall operate a power buggy" (id. [internal quotation marks omitted], quoting 12 NYCRR 23-9.9 [a]). However, this Court held that the provision constituted a "general standard of conduct"—insufficient to impose vicarious liability under Labor Law § 241 (6)—because "it lack[ed] a specific requirement or standard of conduct" (id. [internal quotation marks omitted]). The Court further concluded that "the additional direction that 'trained and competent' individuals must also be 'designated' " failed to "somehow transform[] the provision from a general standard of conduct to a 'specific, positive command' " (id.).
The provision at issue here is even more of a "broad, nonspecific regulatory standard" than the one at issue in Toussaint (id. at 94 [internal quotation marks omitted], quoting Ross, 81 NY2d at 504). Unlike the provision in Toussaint, section 23-4.2 (k) fails to state any action, whatsoever, required to address the safety concerns set forth in the provision. It merely contains a broad prohibition. As a result, vicarious liability under Labor Law § 241 (6) cannot lie.
The references to "area" and "endangered" in section 23-4.2 (k) represent the type of "broad, nonspecific regulatory standard[s]" that this Court has held insufficient to support "an action against a non-supervising owner or general contractor" (Ross, 81 NY2d at 504). Section 23-4.2 (k) does not include a minimum distance that must be maintained between a worker and any excavation equipment, and its protections are not limited to any specific class of worker. The section also does not identify any protective measures or reasonable precautions that a site owner must take in order to comply with the section. Nor does section 23-4.2 (k) provide clear guidance about how owners and contractors should provide reasonable and adequate protection and safety for workers. It merely states a general prohibition with broad applicability, lacking any specific directions. While the safety of workers is a critical concern, the language of section 23-4.2 (k) does not meet the legal standard for specificity required to hold site owners vicariously liable under the Labor Law.
The dissent's attempt to recast that language, as imposing vicarious liability on anyone injured by something that fell anywhere on a construction site due to excavating equipment, would impose the type of strict liability that is not contemplated by Labor Law § 241 (6) (see Bauer v Female Academy of Sacred Heart, 97 NY2d 445, 452 [2002] ["As with Labor Law § 241 (6), statutory causes of action predicated upon violations of administrative regulations do not give rise to strict liability"], citing Long v Forest-Fehlhaber, 55 NY2d 154 [1982]). By its terms, section 23-4.2 (k) broadly prohibits people from being allowed to work in areas where they may be exposed to dangers posed by excavation equipment. Gauging this section, as we must, on a scale of whether it "sets forth a specific standard of conduct" or is "simply a recitation of common-law safety principles," we hold that it falls in the latter category, because it "adds nothing to the general common-law rule requiring the provision of a safe workplace" (Ross v Curtis-Palmer Hydro-Electric Co., 81 NY2d 494, 504 [1993]).FN5
Accordingly, the order of the Appellate Division should be affirmed, with costs.
WILSON, Chief Judge (Dissenting):

While William Mann was using a drill blaster within an excavation site, it stopped working. A drill blaster is used to drill holes in rock so that explosive charges can be placed in the holes, to blast the rock apart. A mechanic was summoned to fix the drill blaster, and he and Mr. Mann moved some distance away from an excavator operating nearby—a large machine with a long boom arm—to be out of its way while they repaired the drill blaster. While they were trying to repair it, the excavator moved and its boom struck Mr. Mann, injuring him.
New York's Labor Law § 241 (6) imposes a "nondelegable duty" (essentially, vicarious liability) on owners and general contractors. As we have impractically FN1 and incorrectly FN2 interpreted that subsection, owners and general contractors are liable, regardless of their own fault or knowledge, when a "specific, positive command" of the Industrial Code has been violated; if the violated provision of the Code merely recites "general safety standards" that mirror the common law duty of care, section 241 (6) provides no relief (Ross v Curtis-Palmer Hydro-Electric Co., 81 NY2d 494, 503, 505 [1993]).
Putting aside the impractical and erroneous constructions of section 241 (6), which are not at issue in this case, section 23-4.2 (k) of the Industrial Code requires owners and general contractors to keep "[p]ersons" out of any part of an excavation site where they might be injured by excavation equipment or material dislodged by such equipment (12 NYCRR 23-4.2 [k]). The question here is whether that provision states a specific, positive command or just restates the common law. Because it provides a specific positive command that differs from what the common law requires, Mr. Mann should be able to proceed on his claim under section 241 (6).
[*5]I.
As the majority does not dispute (see majority op at 6), section 23-4.2 (k) states a positive command: it provides an unequivocal direction to comply with the specifications it sets forth. As a whole, section 23-4.2 concerns safety measures specific to "trench and area type excavations."FN3 Subsection (k) requires owners and contractors to ensure people are kept out of any part of an excavation site where they might be injured by excavation equipment or material dislodged by such equipment. That requirement alone distinguishes this provision from the common law negligence standard; the common law does not require that people be excluded from places where they might be injured—people could be allowed into such areas so long as reasonable measures are taken to ensure their safety (e.g., a hard hat or protective garments when working in a hazardous area) (see In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 57 F Supp 3d 328, 341 [SDNY 2014] [describing site owner's duty of care with respect to premises]; Labor Law § 201 [requiring that a workplace "be so constructed, equipped, arranged, operated and conducted as to provide a reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places"]; Russin v Louis N. Picciano & Son, 54 NY2d 311, 316-317 [1981] ["Section 200 of the Labor Law . . . codified the common-law duty imposed upon an owner or general contractor to provide construction site workmen with a safe place to work"]).
However, even recognizing that section 23-4.2 (k) provides for a positive command that imposes a specific requirement that would exceed what the common law requires, the majority must confront two issues with reading this provision literally. The first is that a literal reading would lead to the impossible result that no excavation workers could work in an excavation area where they might be injured by excavation equipment or debris. But persons operating the excavation equipment are necessarily in an area where they might be injured by the equipment or debris, and the Industrial Code cannot mean to prohibit excavation work itself. That nonsensical result would violate our familiar rules of statutory interpretation, which apply to provisions of the Industrial Code (see Nostrom v A.W. Chesterton Co., 15 NY3d 502, 507 [2010]), and generally prohibit interpretations that work absurd results (Williams v Williams, 23 NY2d 592, 599 [1969] ["We will not blindly apply the words of a statute to arrive at an unreasonable or absurd results"]; see also McKinney's Statutes § 145 ["if a construction sought to be placed on a statute produces an absurdity it is, as a general rule, to be discarded"]). The majority agrees that our rules of statutory construction apply when construing regulations such as those in the Industrial Code (majority op at 5, citing Cruz v Banks, — NY3d — , 2026 NY Slip Op 00821, *4 [2026]), and those rules would read section 23-4.2 (k) as not applying to persons operating the very equipment that might injure them. More importantly, in Bazdaric v Almah Partners LLC, we explained that the Industrial Code should not be interpreted in a way that would not allow work to be performed (41 NY3d 310, 321 [2024] ["certain work assignments are, by their nature, dangerous but still permissible, and the particular commands of the Industrial Code may not apply if they would make it impossible to conduct the work"]).FN4
The second interpretive issue, as the majority describes it, is that an overly literal construction could render superfluous other Industrial Code regulations, particularly section 23-9.5 (c), which the majority barely mentions (majority op at 10 n 5). Section 23-9.5 (c) affirmatively provides that some persons—the pitman and excavating crew—may stand in places where they could be endangered by excavation equipment:
"Excavating machines shall be operated only by designated persons. No person except the operating crew shall be permitted on an excavating machine while it is in motion or operation. No person other than the pitman and excavating crew shall be permitted to stand within range of the back of a power shovel or within range of the swing of the dipper bucket while the shovel is in operation" (12 NYCRR 23-9.5 [c]).
Far from creating the conflict imagined by the majority, these two provisions, both specific, work in tandem. Section 23-4.2 (k) prohibits persons (other than those necessary to work with or around a piece of excavation equipment) from being anywhere in an excavation site where they might be injured by a machine or debris. Section 23-9.5 (c) provides a different, complementary set of requirements. For example, whereas section 23-4.2 (k), interpreted as both the majority and I would read it, must allow the pitman and excavating crew to be in an area where they might be injured by an excavator or debris from it, section 23-9.5 (c) would prohibit them from being on the excavating machine while it was in motion or operation—only the "operating crew" may be there (12 NYCRR 23-9.5 [c]). Likewise, section 23-9.5 (c) authorizes the pitman and excavating crew to be within the range of the back of a power shovel, while section 23-4.2 (k) prevents others from being there. To strain, as the majority does, to read these provisions as in direct conflict would violate the timeworn rule of statutory interpretation that "statutory language should be harmonized, giving effect to each component and avoiding a construction that treats a word or phrase as superfluous" (Columbia Mem. Hosp. v Hinds, 38 NY3d 253, 271 [2022]; see also Matter of New York County Lawyers' Assn. v Bloomberg, 19 NY3d 712, 721 [2012] [A statute "must be construed as a whole and . . . its various sections must be considered together and with reference to each other"] [citation omitted]). It would also contradict [*6]the clear command of our caselaw that "the Industrial Code should be sensibly interpreted and applied" (St. Louis v Town of N. Elba, 16 NY3d 411, 416 [2011]). Moreover, determining that section 23-4.2 (k) is not different from the common law does not relieve the conflict: section 23-9.5 (c) must be read as supplementing section 23-4.2 (k), irrespective of whether the latter is general or specific.
Reading sections 23-4.2 (k) and 23-9.5 (c) together, the only sensible way to harmonize them is to treat section 23-9.5 (c) as providing specific rules for the excavating crew, pitman and operating crew, while section 23-4.2 (k) applies to all others—like Mr. Mann. That is, persons identified in section 23-9.5 (c) may work within an excavation site in locations where they might be struck by excavation equipment or material dislodged by that equipment; others must not be permitted to work in those areas.FN5
Our caselaw reinforces that interpretation. The majority cruises by Rizzuto v L.A. Wenger Contr. Co. (91 NY2d 343 [1998]) and ignores Bazdaric, where we held that 12 NYCRR 23-1.7 (d), which employs the similar language to section 23-4.2 (k) of "shall not suffer or permit," was sufficiently specific for vicarious liability to attach. Section 23-1.7 (d) provides:
"Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing" (12 NYCRR 23-1.7 [d]).
We held that this provision was specific because it "unequivocally directs employers not to 'suffer or permit any employee' to use a slippery floor or walkway, and also imposes an affirmative duty on employers to provide safe footing by requiring that any 'foreign substance which may cause slippery footing shall be removed . . . to provide safe footing" (Rizzuto, 91 NY2d at 350-351, quoting 12 NYCRR 23-1.7 [d] [emphasis omitted]). If anything, section 23-4.2 (k), which requires that employers not "suffer or permit" persons to be in areas where they might be injured by excavation equipment or debris, is more specific than "slippery surface."FN6 Of course, the Industrial Code could have [*7]specified "at least 50 feet from the nearest excavator," just as it could have specified a coefficient of friction for a slippery surface. But neither is required to make an Industrial Code provision specific enough to impose a duty of vicarious liability on owners and general contractors. The determinative question is whether an Industrial Code provision imposes a duty beyond what the common law imposes (Ross, 81 NY2d at 504); a necessary consequence of the majority's holding is the conclusion that the common law requires employers to keep people out of the portion of excavation areas in which they might be injured by excavation machinery or debris. Instead of requiring that the area be made safe, which would be an exact parallel to Rizzuto or Bazdaric, section 23-1.7 (d) forbids most people from being allowed into the zone of danger at all, which is also a more specific requirement, and more different from a general common-law rule requiring due care, than section 23-1.7 (d)'s requirement to make the slippery footing safe.
The majority avoids the straightforward and sensible reading of the Industrial Code and fails to provide a coherent interpretation of section 23-4.2 (k). First, the majority draws out of thin air a new rule, both more demanding and even less coherent than the already confusing one announced by Ross: to sustain a section 241 (6) claim now, the majority says, "a provision of the Industrial Code must both identify a specific safety concern and command a specific action required to address that concern" (majority op at 7 [emphasis by the majority]). We have never articulated the Ross framework to demand specificity of this particular kind, and such a rule does not accord with our precedents. The majority cites to Morris v Pavarini Construction (9 NY3d 47 [2007]) where the relevant regulation provided that "[f]orms . . . shall be structurally safe and shall be properly braced or tied together so as to maintain position and shape" (id. at 50). The regulation plainly identifies no specific danger by its terms, yet we held that a portion of the regulation was sufficiently specific. The majority also relies on Gasques v State of New York (5 NY3d 869 [2010]), where we deemed a regulation prohibiting employees from working with machinery in disrepair or otherwise unsafe working condition insufficiently specific, even though the regulation explicitly identified a specific safety concern—equipment prone to error—and commanded a specific action—barring use of such equipment.
Nor does the majority's new articulation accord with Rizzuto, in which we held each part of the regulation there sufficiently specific, including the sentence "[e]mployers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition." Our determination that the preceding provision was sufficiently specific did not reference, much less depend upon, the final sentence in that regulation, requiring slippery conditions to be removed, sanded or covered (Rizzuto, 91 NY2d at 350-351).
The majority does not contend that section 23-4.2 (k) fails to identify a "specific safety concern." The concern is obvious from the face of the regulation: injury from excavators and associated falling debris. Instead, the majority contends that the regulation fails the second part of its new test—that section 23-4.2 (k) "fails to state any action, whatsoever, required to address the safety concerns set forth in the provision" (majority op at 9). The fact that an instruction is "broad"—in the sense that it affects many people—does not render it nonspecific. Common signs that say "do not enter," "stay off the tracks" or "no trespassing" apply to broad swaths of people, yet are quite specific in their command, just as section 23-4.2 (k) is. The instruction to prevent people from entering a dangerous area fully meets the majority's requirement by specifying an "action . . . required to address the safety concerns set forth in the provision."
Even the majority's comparison to Toussaint undermines the very conclusion it reaches here. According to the majority, because section 23-4.2 (k) is less specific than the provision we construed in Toussaint, it is not specific enough to sustain a claim under Labor Law § 241 (6) (majority op at 8-9). In Toussaint, the Court held that the regulation at issue—which provided that "[n]o person other than a trained and competent operator designated by the employer shall operate a power buggy"—was a "general standard of conduct" insufficiently specific to impose vicarious liability under Labor Law § 241 (6) (majority op at 8, citing Toussaint, 38 NY3d at 95). The majority [*8]claims that section 23-4.2 (k) is less specific than the regulation in Toussaint. However, it is less of a stretch to say that the common law requires only a person trained to operate a particular type of specialized equipment to be allowed to drive such a vehicle, than it is to say that the common law requires all persons to be excluded from the portions of excavation areas where they might be injured by machinery or debris. As explained earlier, principles of common law negligence could allow workers to be in such areas provided that the safety measures taken were reasonable; section 23-4.2 (k) removes all such options by requiring the exclusion of workers from such areas, regardless of the reasonableness of any other safety measures that have been implemented. It is much harder to imagine reasonable steps that might be taken to allow operation of machinery by someone who was not trained in its use.
The majority's misplaced reliance on Toussaint also ignores the more comparable regulations we deemed sufficiently specific in Rizzuto and Bazdaric. Most tellingly, it makes no reference to the common law standard of care in this context, which of course is the most relevant point of comparison when evaluating whether a regulation "sets forth a specific standard of conduct and is not simply a recitation of common-law safety principles" (Toussaint, 38 NY3d at 94 [citations omitted]).
The majority's other textual objections to the scope of section 23-4.2 (k) fall short. First, the majority claims that section 23-4.2 (k)'s "references to 'area' and 'endangered' " are akin to the broader regulations this Court previously deemed insufficiently specific to sustain a section 241 (6) claim (majority op at 9). Relatedly, the majority objects that section 23-4.2 (k) contains no "minimum distance" of safety around the excavation equipment (id.). But the fact that an Industrial Code provision requires the exercise of judgment does not mean that it is insufficiently specific. If it did, "slippery" is no more specific than "area in which a person might be injured by machinery or debris" (see Rizzuto, 91 NY2d at 350-351).
The majority also observes that section 23-4.2 (k) is not limited to "any specific class of worker" and does not say "how owners and contractors should provide reasonable and adequate protection and safety for workers" (majority op at 9). The former has nothing to do with specificity: a provision stating that everyone entering an area must wear a hazmat suit is specific even if it applies to all workers as well as visitors. And although it does not matter, section 23-4.2 (k) indeed applies to a specific class of people—all people except those people specified in section 23-9.5 (c), who may work in areas where they may be endangered by excavators or objects dislodged from them. The majority further contends that section 23-4.2 (k) "does not identify any protective measures or reasonable precautions that a site owner must take in order to comply with the section" (majority op at 9). Once again, section 23-4.2 (k) does provide a clear instruction for safety—keep away!—which is safer than the provision of protective gear and distinct from the common law, which would allow reasonable methods short of a strict keep away requirement (supra, pp 3-4). Further, a regulation's proviso of a specific safety distance, or a specific mode of providing protection against a specific danger, may be sufficient conditions to establish the requisite specificity for purposes of a section 241 (6) claim, but we have never established those as necessary conditions, perhaps because to do so would threaten to render nonspecific any similar regulation that lacks those hyper-specific elements, no matter how specific it otherwise is. Such rigid factors eschew our duty to interpret regulations "sensibly" (St. Louis, 16 NY3d at 416) and contradict our prior cases; as noted above, section 23-4.2 (k)'s command to keep a specific class of people safely away from the specific dangers of swinging excavators is equivalent to the regulatory commands in both Rizzuto and Bazdaric (supra, pp 7-9). Further, in Misicki, we held sufficiently specific a regulation which provided that "[u]pon discovery, any structural defect or unsafe condition in such equipment shall be corrected by necessary repairs or replacement" (12 NY3d at 516). "Defect or unsafe condition" requires the use of professional judgment, and the command to repair or replace dangerous conditions is even less specific than the command that persons be kept out of the danger zone of an excavator.
*
If readers take nothing else from the back and forth in this and our several other opinions (and those of the Appellate Division) deciding which provisions of the Industrial Code impose a specific duty beyond the common law and which do not, it should be obvious that the Ross framework has proven impossible to provide predictable or consistent results for owners, contractors and workers alike. At this point we need sticky notes from the Legislature tagging those provisions to which vicarious liability attaches. Even if those are haphazard and unprincipled, they will be knowable ahead of time, which would be a substantial benefit over the present chaos.
Order affirmed, with costs. Opinion by Judge Troutman. Judges Garcia, Singas and Cannataro concur. Chief Judge Wilson dissents in an opinion, in which Judges Rivera and Halligan concur.
Decided May 26, 2026

Footnotes

Footnote 1
Mann passed away while this litigation was pending and was substituted by the administrator of his estate.

Footnote 2
The dissent's application of this principle is misguided by its misinterpretation of our decision in Bazdaric (41 NY3d 310). Although the Bazdaric Court reiterated articulately the test for determining whether a provision of the Industrial Code is specific enough to provide for vicarious liability, that was not the issue before this Court. The Bazdaric Court recognized that we had previously decided in Rizzuto that Industrial Code section 23-1.7 (d) was sufficiently specific (id. at 315). The issue in the section of Bazdaric quoted by the dissent was whether that provision of the Industrial Code met the requirements of the doctrine—announced in Salazar v Novalex Contr. Corp. (18 NY3d 134 [2011])—that "certain work assignments are, by their nature, dangerous but still permissible, and the particular commands of the Industrial Code may not apply if they would make it impossible to conduct the work" (Bazdaric, 41 NY3d at 321). The dissent's use of this statement to argue that a concrete specification in one provision of the Industrial Code transforms another broad provision into a specific provision is, therefore, unavailing (cf. dissenting op at 5]). Under Bazdaric and Salazar, the consequence of an Industrial Code provision making it impossible to do the job at issue in a particular case is not reinterpreting the provision as containing a more concrete specification found elsewhere in the Industrial Code (see e.g. 12 NYCRR 23-9.5 [c]). The consequence is, instead, holding that the provision "would have been inconsistent with . . . an integral part of the job" and dismissing the claim raised under that provision (Salazar, 18 NY3d at 140). We have not been asked to affirm the dismissal of plaintiff's claim on that basis, so we do not address that issue here (see Misicki, 12 NY3d at 518-520).

Footnote 3
The dissent insinuates that in Rizzuto we held that a provision of the Industrial Code was sufficiently specific because, similar to the provision at issue here, it contained the words "shall not suffer or permit" (see dissenting op at 7-9). That is not accurate. We held that the direction not to "suffer or permit" a certain action helped it meet the requirement under Ross for vicarious liability, because it set forth an "unequivocal[ ] direct[ion]" (Rizzuto, 91 NY2d at 350). We viewed other clauses in that provision as specifying a concrete duty: e.g., the requirement that any "foreign substance which may cause slippery footing shall be removed . . . to provide safe footing " (id. at 351). Certainly, the dissent is not saying that the words "shall not suffer or permit" turns whatever is said next into a concrete specification meeting the Ross test. If that was true, a provision would be sufficiently specific if it merely stated that an employer "shall not suffer or permit people on the construction site to be exposed to unreasonable dangers."

Footnote 4
Despite what the dissent implies, it is not controversial to say that provisions of the Industrial Code address safety concerns (cf. majority op at 9). Section 23-4.2 (k) certainly addresses safety concerns. Indeed, that is the point of both Labor Law § 241 (6) and Industrial Code part 23, both of which govern this dispute (see Labor Law § 241 [6] [mandating the provision of "reasonable and adequate protection and safety" to people working in "construction, excavation or demolition"]; 12 NYCRR 23-1.2 [containing rules created pursuant to the "board(s) find(ing) that the trades and occupations of persons employed in construction, demolition and excavation operations involve such elements of danger to the lives, health and safety of such persons . . . "]). We highlight the Industrial Code's safety concerns to give context to the requirement that in order for a specification in the Industrial Code to impose a nondelegable duty it must "mandat[e] compliance with concrete [safety] specifications" (Ross, 81 NY2d at 505).

Footnote 5
The dissent is correct that the various provisions of the Industrial Code "should be harmonized, giving effect to each component and avoiding a construction that treats a word or phrase as superfluous" (dissenting op at 6 [quotations marks omitted], quoting Columbia Mem. Hosp. v Hinds, 38 NY3d 253, 271 [2022]). However, that does not mean a more concretely worded section of the Industrial Code can turn a generally worded provision into a concrete one. Such alchemy is contrary to this Court's sensible understanding of what makes an Industrial Code provision insufficiently "broad" or "general," instead of sufficiently "concrete" or "specific." The inquiry is not an unconstrained, acontextual, meditation on the concepts of generality and specificity. In Ross, this Court defined an insufficiently specific Industrial Code provision as one that "cannot by itself be relied upon as the source of an owner's or general contractor's nondelegable duty to all workers assigned to perform construction chores on the premises" (Ross, 81 NY2d at 504 [emphasis added]). As a result, a plaintiff may not rely on another, more concrete, provision of the Industrial Code (e.g., section 23-9.5 [c]) to make a generally worded provision (e.g., section 23-4.2 [k]) concrete enough to impose a nondelegable duty on a site owner. If resort to a more specific provision is required to make a less specific provision concrete enough to impose vicarious liability, we read the less specific provision as "merely incorporate[ing] the general common-law standard" (id. at 505). That is what the Ross Court held, and that is the rule we apply today.

Footnote 1
Misicki v Caradonna, 12 NY3d 511, 522-524 (2009) (Graffeo, J., dissenting). Further evidence of the impracticality of the distinction we adopted in Ross is found not only in the disagreement about the result in this case, but in the varied interpretations of different panels of the Appellate Division about whether this very provision is specific or general. The First Department has reached differing conclusions (see Sparendam v Lehr Constr. Corp., 24 AD3d 388, 389 [1st Dept 2005]; Elezaj v P.J. Carlin Constr. Co., 225 AD2d 441, 442 [1st Dept 1996], affd 89 NY2d 992 [1997] [affirming on the ground of failure to preserve]). The Second Department has held, without elaboration, that the provision is sufficiently specific (Zaino v Rogers, 153 AD3d 763, 765 [2d Dept 2017]). In Garcia v Silver Oak USA, Ltd., the Second Department reasoned that, by contrast with section 23-4.2 (g), which it deemed insufficiently specific because the work site was not an excavation or trench, section 23-4.2 (k) provided a predicate for section 241 (6) liability (Garcia v Silver Oak USA, Ltd., 298 AD2d 555 [2d Dept 2002]). The Third and Fourth Departments have held the provision is not sufficiently specific, also without elaboration (see Vicki v City of Niagara Falls, 215 AD3d 1285, 1289 [4th Dept 2023]; Mohamed v City of Watervliet, 106 AD3d 1244, 1247 [3d Dept 2013]).

Footnote 2
Toussaint v Port Auth. of New York and New Jersey, 38 NY3d 89, 106-109(2022) (Wilson, J., dissenting).

Footnote 3
These safety measures include specifications for slopes of the sides (section 4.2 [a], [b], [d]), sheeting to protect from erosion by rain (4.2 [a]), oversight of unbraced slope excavations below the ground water table (4.2 [c]), shoring by professional engineers (4.2 [e]), and safe piling of excavated material (4.2 [f]). Sections 4.2 (h) and (i) concern fencing or railings around the excavation site, to prevent accidental entry.

Footnote 4
One has only to read Bazdaric to see that the majority has misstated it. We did not merely "reiterate[] articulately the test," (majority op at 5 n 2), but we began by holding that, contrary to the Appellate Division's decision, the plaintiffs had met their summary judgment burden to show that a section of the Industrial Code containing a specific command had been violated, and only after that, in an entirely separate section of our opinion, did we address the defendants' alternative argument that "[d]efendants also argue that the plastic covering was integral to the work." Both issues were squarely before us, and to reverse the Appellate Division we necessarily had to decide both.

Footnote 5
The majority claims that as a consequence of the conflict between the less specific section 23-4.2 (k) and the more specific section 23-9.5 (c), the former must necessarily be a "general" standard (majority op at 10 n 5). Of course, section 23-4.2 (k) can be less specific than section 23-9.5 (c), yet both may be specifically different enough from the common law to provide causes of action under Labor Law § 241 (6)—there is no requirement that a provision be as specific as every other specific provision to meet our test from Ross. Nor did Ross create a unique rule of statutory interpretation, peculiar to the Industrial Code, requiring our understanding of text to be undertaken without reference to the statute as a whole or the substantively related subsections thereof. Mr. Mann relies on one provision itself—here, section 23-4.2 (k)—whose meaning is shaped, like every law, by its surrounding provisions. The "alchemy" here is the majority's transmutation of our long-established rule (accepted by courts throughout the nation) that provisions of a statute should be harmonized (supra, p 6-7) and our specific instruction that "[t]he Industrial Code should be sensibly interpreted and applied" in light of its purpose (St. Louis, 16 NY3d at 416). The basic proposition the majority refuses to accept is that subsections of a law may shape each other's meaning. If the Legislature passes a law that says bananas must be distributed for free, and later passes a law that says no overripe bananas can be distributed for free, the simple implication is that the former law's meaning has been changed: only non-overripe bananas can be distributed for free. That kind of statutory construction—relying on the broader statutory scheme and related provisions—is what courts have done for centuries. Both can be specific, even though "overripe" is not stated by the brownness or odor of the banana.

Footnote 6
Rizzuto, which this Court deemed sufficiently specific, held that section 23-17 (d) forbids employers to "suffer or permit" employees from working on slippery surfaces; section 23-4.2 (k) forbids employers to "suffer or permit" employees from working in areas where they might be hit by excavation machinery or debris. The majority then contends that although "suffer or permit" "would state a positive command," it is not specific (majority op at 7 n 3). That is exactly correct, but in both sections the phrase "suffer or permit" is attached to something more specific than what the common law requires. Indeed, the instruction not to permit employees to work on a slippery surface and to remove anything slippery is much closer to what the common law requires than is the instruction to keep employees entirely out of an area, no matter what steps an employer might reasonably take to make it safe to be present in an area.